**In re GOURMET SERVICES, INC., Debtor.**

**Bankruptcy No. 2-92-00325.**

United States Bankruptcy Court, S.D. Ohio, E.D.

May 6, 1992.

Rebecca J. Stumler, Tataru, Wallace & Warner, Columbus, Ohio, for debtor.

James H. Gordon, Columbus, Ohio, Receiver and Atty. for receiver.

Roger F. Carroll, Baker & Hostetler, Columbus, Ohio, for BancOhio Nat. Bank.

Christopher L. Lardiere, Columbus, Ohio.

Michael R. Szolosi, Guy R. Humphrey, Szolosi & Fitch, Columbus, Ohio.

**ORDER OF MOTION OF JAMES H. GORDON, RECEIVER, FOR RELIEF FROM AUTOMATIC STAY**

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter is before the Court upon the Motion of James H. Gordon, Receiver, for Relief from Automatic Stay filed by James

H. Gordon, Receiver, ("Receiver") and the Memorandum of Debtor in Opposition to the Motion and Request for Hearing of James H. Gordon, Receiver, for Relief from Automatic Stay filed by Gourmet Services, Inc. ("Debtor"). A hearing to consider this matter was held March 3, 1992 at which time the parties were afforded the opportunity to present evidence in support of their respective positions.

This Court is vested with jurisdiction under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## I. Findings of Fact

James Gordon was appointed Receiver for a retail shopping center, commonly known as Flags Center, ("Property"), on or about July 15, 1991, by order of the Franklin County Court of Common Pleas. The Debtor leased space at the Property for one of its two retail operations.

Prior to the filing of Debtor's petition, the receiver had instituted proceedings in state court to evict the Debtor from the Property for failure to pay rent.

On or about January 15, 1992, the Receiver hand delivered a letter to an employee of the Debtor at the Property advising the Debtor that the Receiver had elected to terminate the Debtor's lease ("Lease") for non-payment of rent pursuant to Item 22(B) of the Lease. Item 22(B) provides:

If the Lessee [Debtor] is in default in the payment of rent for ten (10) days … then and in any such event the Lessor may, if the Lessor so elects, with or without notice of such election, except as herein provided, with or without demand, forthwith terminate this Lease, and the Lessee's right to possession of the premises.

Debtor filed its petition under chapter 11 on January 16, 1992.

## II. Conclusions of Law

The Receiver seeks relief from the automatic stay for cause[1] under 11 U.S.C. § 362(d)(1) which provides:

On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; …

The Receiver premises his argument upon the pre-petition termination of the Lease. The Receiver contends that the Lease is no longer an assumable executory contract under 11 U.S.C. § 365, because the Debtor no longer has an interest to assume due to the pre-petition termination of the Lease. Therefore, the Receiver maintains that the Debtor's inability to assume or assert an interest in the Lease entitles the Receiver to relief from stay so that he may obtain possession of the Property.

Leases which are validly terminated prior to the filing of the petition cannot be assumed as an executory contract under 11 U.S.C. § 365. *In re Gateway Investors, Ltd.*, 113 B.R. 564, 570 (Bankr.D.N.D.1990). The rights of the parties, including termination, are set forth in the Lease. Therefore, it is necessary for this Court to examine the terms of the Lease to determine whether the Lease was in fact terminated.

Item 22(B) of the Lease (quoted above) clearly provides that the Lessor may terminate the Lease, with or without notice to the Debtor, upon Debtor's default in the payment of rent for ten (10) days. The uncontroverted testimony at hearing established that the Debtor had been in default in the payment of rent in excess of ten (10) days and that a notice of the Receiver's election to terminate the Lease (although apparently unnecessary under Item 22(B))

---

1. The Debtor argues that the Receiver should be denied relief, because there has been no allegation "that the assumption of the lease would not be necessary to an effective reorganization." However, a showing that property is not neces-
sary to an effective reorganization is only required when seeking relief from stay under 11 U.S.C. § 362(d)(2). The Receiver seeks relief from stay under 11 U.S.C. § 362(d)(1).

was hand delivered to an employee of the Debtor at the Property (in compliance with the procedures for giving notice found in Item 24 of the Lease) on January 15, 1992. According to the terms of the Lease, the Lease was terminated upon delivery of the notice to the Property (Item 24).

■ The Debtor raises two issues in opposition to this conclusion. First, the Debtor argues that the Receiver was required to make a demand for payment from the Debtor before the Lease could validly be terminated. It is, however, unnecessary for the Court to make a factual determination as to whether or not such a demand was made. The terms of the Lease require no such demand, and the Court is not aware of, nor has the Debtor cited, any case or statutory law which requires such a demand before termination of a commercial lease. Second, the Debtor contends that the Receiver acted beyond his grant of authority in terminating the Lease. This issue is more involved than the first and thus requires a closer examination.

The authority of the Receiver in this case is a matter governed by Ohio state law. Section 2735.04 of the Ohio Revised Code provides:

> Under the control of the court which appointed him, as provided in section 2735.01 of the Revised Code, a receiver may bring and defend actions in his own name as receiver, take and keep possession of property, receive rents, collect, compound for, and compromise demands, make transfers, and generally do such acts respecting the property as the court authorizes.

A review of the Order Appointing Receiver entered by the state court indicates that the Receiver is authorized as follows:

> 2. The Receiver is hereby granted authority to take possession of, manage, control and protect the Premises during the pendency of this action, to collect the rents and profits thereof, to apply the net proceeds to the payment of expenses, taxes, court costs, assessments, insurance premiums and first mortgage indebtedness with respect to the Premises, to do any and all other things including but not limited to the employment and/or retention of employees related to the management and control of the Premises, and to do such things as are necessary in order to provide services to the Premises' tenants.

Unfortunately, neither the Revised Code nor the Order of Appointment address the extent to which the Receiver succeeds to the rights and powers of the Property owner, or, more specifically, the Receiver's authority to terminate contracts of the Property owner. Therefore, the Court must analyze the remedy of receivership to determine whether the actions of the Receiver in this case comports with the purpose of his appointment.

■ The appointment of a receiver is merely an ancillary proceeding to a main action. Its purpose generally is "to secure the means for satisfying the final judgment in case the plaintiff should succeed in the action ..." *Cincinnati, Sandusky and Cleveland Railroad Co. v. Sloan*, 31 Ohio St. 1, 8 (1876). In other words, the Receiver is appointed to maintain the status quo regarding the property in controversy and to safeguard said property from being dissipated while the plaintiff is pursuing his remedy.[2]

The state court order appointing the Receiver evinces this purpose. The order provides that the Receiver is to collect rents, pay bills, obtain insurance, and perform minor repairs. All of these charges relate to the preservation of the Property.

---

2. "A receiver, however, whether appointed by a court, or by a board, as in this case, is the ministerial officer and servant of those from whom he receives his appointment; and he is responsible for the exercise of good faith and reasonable diligence in the discharge of his duties. But it can not be said that a receiver by virtue of his office in any case, nor by the provisions of the statute in this case, becomes vested with the title to the property or assets which he administers. His relation to the property, like that of a constable, sheriff or master in chancery, is merely that of a ministerial officer." *Lafayette Bank v. Buckingham*, 12 Ohio St. 419, 425 (1861).

The alteration of the contractual rights of the Property owner and third parties certainly goes beyond simple maintenance and preservation of the Property. The removal of a tenant from the Property, even one in default of rent, is obviously a modification of the status quo not contemplated by the Revised Code or the order appointing the Receiver. The Receiver is a fiduciary representative of the court appointing him.[3] In order to undertake actions which alter the status of the Property, the Receiver must have obtained authority from the court. No such authority was accorded to the Receiver by the order of appointment nor did the Receiver apply to the court for such authority. Therefore, this Court must conclude that the Receiver had no authority to terminate the Lease, and his election to do so without approval from the state court is void. The purported termination of the Lease can thus not be recognized by this Court.

As the Lease apparently remains in effect and may be assumed by the Debtor, assuming the Debtor has the ability to comply with the provisions of 11 U.S.C. § 365, the Court finds that cause does not exist to justify relief from stay. Therefore, it is hereby

ORDERED that the Motion of James H. Gordon, Receiver, for Relief from Automatic Stay is DENIED.

IT IS SO ORDERED.

---

**3.** "The appointee is an officer of the court, his possession the possession of the court, and the appointment is made in order to conserve the interests of the litigants with respect to the property in *custodia legis.*" *Forest City Investment Co. v. Haas,* 110 Ohio St. 188, 192–93, 143 N.E. 549 (1924).