MILO et al., Appellees,

v.

CURTIS et al., Appellants.

[Cite as *Milo v. Curtis* (1994), 100 Ohio App.3d 1.]

Court of Appeals of Ohio,
Ninth District, Summit County,

No. 16550.

Decided Dec. 30, 1994.

*Frederick M. Lombardi, Patrick J. Keating* and *Alan P. DiGirolamo,* for appellees.

*Michael J. Moran* and *Leslie S. Graske,* for appellants.

*Nicholas T. George,* and *Jonathon Yarger,* for other parties.

---

REECE, Presiding Judge.

Defendants-appellants, Fred P. Milo and the Milo Company (collectively "Fred"), appeal from the trial court's order denying their motion to terminate a receivership that was established after entry of a cognovit judgment in favor of the plaintiffs-appellees ("plaintiffs").[1] We affirm.

In 1986, the plaintiffs entered into a settlement agreement with Fred, the Milo Beauty & Barber Supply Company ("Milo B & B"), and Lonnie Curtis and Sophia Milo Curtis ("the Curtises"). The settlement ended protracted litigation between the parties. As part of the settlement, Fred and Milo B & B jointly and severally executed a cognovit note promising to pay the plaintiffs $2.95 million to buy back

---

1. Initially, Fred P. Milo was not a named party in the action below. He was, however, a partner in the Milo Company. On November 22, 1991, the parties stipulated that Fred was to be added as a party defendant, and Fred agreed to a *nunc pro tunc* cognovit judgment being entered against him relating back to the original date of the cognovit judgment. In his brief, Fred states that he is the only remaining partner in the Milo Company, thereby making it a sole proprietorship. For purposes of this appeal, we will refer to Fred in his individual capacity, although our decision applies equally to the Milo Company.

the plaintiffs' Milo B & B stock. The Curtises executed a guarantee of full payment on that note. The note was additionally secured by mortgages on several parcels of real estate owned by Fred.

In December 1990, Milo B & B filed for Chapter 11 reorganization under the United States Bankruptcy Code and stopped making payments on the note. As a result, the plaintiffs declared the note in default, sought a cognovit judgment against Fred and the Curtises, and requested that a receiver be appointed to take possession and control of Fred's business and property.

On February 26, 1991, the trial court entered a cognovit judgment against Fred and the Curtises for $814,275.34, the outstanding balance on the note.[2] On November 22, 1991, upon consent of the parties, the trial court appointed a receiver to take control of Fred's assets, business, and income and specifically authorized the receiver to sell, subject to court approval, eight parcels of real estate. The receiver sold six of the parcels of real estate and distributed the net proceeds to the plaintiffs. On May 13, 1992, the plaintiffs certified to the court that the $814,275.34 cognovit judgment had been paid and the corresponding judgment liens and mortgages discharged.

On June 25, 1993, the bankruptcy trustee for Milo B & B filed a $1 million action against the plaintiffs in federal bankruptcy court. The action was filed to set aside, as fraudulent or preferential transfers, payments on the $2.95 million cognovit note that Milo B & B had made to the plaintiffs prior to filing for bankruptcy and defaulting on the note. On October 4, 1993, the plaintiffs moved for leave to file an amended and supplemental complaint in this action, seeking to have the receivership over Fred's assets continued until resolution of the fraudulent transfer litigation. The plaintiffs claimed that if they had to return Milo B & B's pre-bankruptcy note payments to the trustee as fraudulent or preferential transfers, then Fred and the Curtises would be obligated, as co-maker and guarantors on the note with Milo B & B, to reimburse the plaintiffs for the returned sums because those sums would be considered reinstated and unpaid debt. Therefore, the plaintiffs argued that the receiver should continue to control Fred's assets so that those assets would be available to satisfy any portion of the debt reinstated as a result of the fraudulent transfer litigation.

On October 7, 1993, Fred moved to terminate the receivership. Fred asserted that the plaintiffs' cognovit judgment had been satisfied and that the plaintiffs had secured no other judgment upon which continuation of the receivership could be based. On November 8, 1993, the trial court denied Fred's motion to

---

2. Fred and the Curtises subsequently moved to vacate the cognovit judgment. The trial court denied the motion and, on appeal, this court affirmed. *Milo v. Milo Co.* (June 17, 1992), Summit App. No. 15251, unreported, 1992 WL 139991.

terminate the receivership and permitted the plaintiffs to file an amended and supplemental complaint. The court specifically found that "[i]t would be inequitable for the Court to terminate this receivership at the present time, but the preservation of the receivership would maintain the status quo * * * in the event those funds paid out from this cause were later taken by the Trustee in Bankruptcy away from the Plaintiff[s]." Fred appeals, raising two assignments of error.

In his first assignment of error, Fred argues that because the purpose of the receivership had been fulfilled upon satisfaction of the plaintiffs' cognovit judgment, the trial court erred in denying his motion to terminate the receivership. While many cases and commentators have addressed the standards to be applied for the appointment of a receiver, very few authorities have discussed the standards to be applied for the termination of a receivership. As a result, Fred relies in considerable part upon the cases addressing appointment of a receiver to support his argument.

The Ohio Supreme Court has stated that "the appointment of a receiver is the exercise of an extraordinary, drastic, and sometimes harsh power which equity possesses, and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury." *Hoiles v. Watkins* (1927), 117 Ohio St. 165, 174, 157 N.E. 557, 559. Because the appointment of a receiver is such an extraordinary remedy, a petitioning party must show by clear and convincing evidence that the appointment is necessary for the preservation of the petitioning party's rights. *Malloy v. Malloy Color Lab, Inc.* (1989), 63 Ohio App.3d 434, 437, 579 N.E.2d 248, 250. If the petitioning party meets this initial evidentiary burden, then the trial court is vested with sound discretion to decide whether to appoint a receiver, and its decision will not be reversed on appeal absent an abuse of discretion. See *Equity Centers Dev. Co. v. S. Coast Centers, Inc.* (1992), 83 Ohio App.3d 643, 649–650, 615 N.E.2d 662, 666–667.

Fred argues that if a petitioning party must establish the need for appointment of a receiver by clear and convincing evidence, then it follows that the petitioning party must also establish the need for continuation of a receivership by clear and convincing evidence. Specifically, Fred contends that upon his motion to terminate the receivership, the plaintiffs were required to demonstrate by clear and convincing evidence that continuation of the receivership was necessary to protect their rights to recover on the cognovit judgment. Because the cognovit judgment had already been satisfied, Fred claims the plaintiffs failed to meet that burden.

The plaintiffs argue that once a receiver is appointed, the determination of whether to continue or terminate the receivership is entrusted to the sound

discretion of the trial court. Thus, the plaintiffs contend that in light of the nature of proceedings in the bankruptcy court, it was not an abuse of discretion for the trial court to continue the receivership in order to preserve the status quo pending resolution of that litigation. After reviewing the relevant authorities on termination of a receivership, we agree with the plaintiffs.

The equitable power to appoint a receiver has been codified in R.C. 2735.01. That statute, however, does not contain any provision addressing the termination of a receivership. Nonetheless, since at least 1876, the Ohio Supreme Court has recognized that even though there is no express statutory provision authorizing the termination of a receivership, "the power to terminate seems to flow naturally and as a necessary sequence from the power to create." *Cincinnati, Sandusky & Cleveland RR. v. Sloan* (1876), 31 Ohio St. 1, 12. Considering that the trial court possesses an implied, if not inherent, power to terminate a receivership it has created, the *Sloan* court further found that "the question of the appointment or discharge of a receiver is a matter resting in the discretion of the [trial] court." *Id.* at 13.

As early as 1865, the United States Supreme Court articulated the same view, finding that "the appointment and discharge of a receiver are ordinarily matters of discretion in the Circuit Court, with which this court will not interfere." *Milwaukee & Minnesota RR. v. Soutter* (1865), 69 U.S. (2 Wall.) 510, 521, 17 L.Ed. 900, 904. More recently, the United States First Circuit Court of Appeals held that a district court "possesses a broad range of discretion in deciding whether or not to terminate an equity receivership and our review is limited to determining whether that discretion has been abused." *SEC v. An–Car Oil Co.* (C.A.1, 1979), 604 F.2d 114, 119. See, also, *Jones v. Village of Proctorville, Ohio* (C.A.6, 1961), 290 F.2d 49, 50; *Singer v. Goff* (1952), 334 Mich. 163, 167, 54 N.W.2d 290, 292.

In addition to the discretion outlined above, it is well settled that a receivership terminates only upon an order of the court having jurisdiction over the receivership. *Hoover–Bond Co. v. Sun–Glow Indus., Inc.* (1936), 57 Ohio App. 246, 10 O.O. 424, 13 N.E.2d 368. Thus, unless expressly limited when established, a receivership does not automatically end upon a change in circumstances or completion of the appointed task but, rather, continues until the court formally orders its termination. See *Ford v. Fulton* (App.1935), 19 Ohio Law Abs. 314; 75 Corpus Juris Secundum (1952) 737–738, Receivers, Section 92.

In light of the preceding authority, we conclude that once a receivership is established, the party who petitioned for the receivership does not have to demonstrate the need for its continuation by clear and convincing evidence. Instead, we find that the burden is on the party whose assets are subject to the

receiver's control to move for termination of the receivership and to demonstrate that, in the interests of equity, the receivership should be terminated and control over the property restored. The determination of whether the moving party has met this burden is entrusted to the sound discretion of the trial court, and the court's decision in this regard will not be reversed on appeal absent an abuse of discretion.

Given that the trial court possesses a broad range of discretion to determine whether to terminate a receivership, the remaining question in this appeal is whether the trial court abused its discretion in denying Fred's motion to terminate and continuing the receivership over Fred's assets even though the plaintiffs' cognovit judgment had been satisfied.

■ As a general rule, a party whose assets are controlled by a receiver has a right to have the receiver discharged and his property restored if he satisfies the debt upon which the receivership is based. *Soutter*, 69 U.S. at 521–22, 17 L.Ed. at 904. This rule is not absolute, however, and more recent cases have recognized that a trial court may, in the interests of equity, exercise its discretion to continue a receivership even though the judgment of the petitioning creditor has been satisfied. A leading case in this regard is *Consol. Rail Corp. v. Fore River Ry. Co.* (C.A.1, 1988), 861 F.2d 322.

In *Consolidated Rail*, Conrail obtained a judgment against Fore River for unpaid freight charges. In order to secure payment of that judgment, the district court appointed a receiver over Fore River's assets. Upon motion of the receiver, the court clarified the receiver's duties and ordered him to pursue remedies on behalf of all of Fore River's creditors, although they were not named parties, even after Conrail's judgment had been satisfied. On appeal, Fore River argued that the receiver's duties should be limited to enforcing Conrail's judgment and that the receivership should be terminated upon satisfaction of that judgment. The court of appeals rejected Fore River's argument.

■ The court of appeals first acknowledged the general rule that when the reason for continuing a receivership has ceased, the receiver should be discharged and the property restored to the owner. *Id.* at 327. See, also, 7 Moore, Federal Practice, Part 2 (2 Ed.1992), Paragraph 66.04[7], at 66–21. Nevertheless, the court determined that "it is discretionary and not incumbent upon the [trial] court to dismiss the receiver when the debt is discharged." 861 F.2d at 327. Rather, the trial court may, in its discretion, continue the receivership for the benefit of other creditors even though the judgment of the petitioning creditor has been satisfied. *Id.* See, also, 7 Moore, Federal Practice, Part 2 (2 Ed.1992), Paragraph 66.04[2], at 66–13. The *Consolidated Rail* court did caution, however, that "[a]lthough the need for a receiver does not automatically expire once the

petitioning creditor has been repaid, there must be some cognizable need or risk of unfair prejudice to warrant continuing a receivership thereafter." 861 F.2d at 328, fn. 4.

On the facts, the court found that a risk of unfair prejudice to Fore River's other creditors existed. Therefore, in order to ensure that those creditors would not be left without a remedy, the court concluded that it was within the discretion of the trial court to continue the receivership even after the judgment of the petitioning creditor, Conrail, had been satisfied. See, additionally, *Lauraine v. First Natl. Bank of Whitney* (Tex.Civ.App.1918), 204 S.W. 1022, 1026; *Fountain v. Mills* (1900), 111 Ga. 122, 123, 36 S.E. 428, 429; *Lenoir v. Linville Improvement Co.* (1895), 117 N.C. 471, 475–476, 23 S.E. 442, 443.

Although the facts in *Consolidated Rail* are somewhat distinguishable, we find the principles articulated in that case to be persuasive, and we believe the court's reasoning extends to the facts in the present appeal. First, we agree with the *Consolidated Rail* court that the need for a receivership does not automatically end once the petitioning creditor's judgment has been satisfied. Instead, we find that in addition to weighing the fact that the petitioning creditor has been paid, the trial court must also take into account all other facts and circumstances of the case, including any relevant equitable considerations, before deciding whether to terminate the receivership. See *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 73, 573 N.E.2d 62, 67, fn. 3. "A court in exercising its discretion to appoint or refuse to appoint a receiver must take into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." *Id.*, quoting 65 American Jurisprudence 2d (1972) 874, Receivers, Section 20.

Second, we agree with the *Consolidated Rail* court that there must be some cognizable need or risk of unfair prejudice to warrant continuing a receivership after the petitioning creditor's judgment has been satisfied. However, because the decision of whether to terminate a receivership turns on the facts and circumstances of each case, the determination of what constitutes cognizable need or risk of unfair prejudice cannot be easily categorized and instead must be made on a case-specific basis. Finally, we emphasize that because the trial court is in a better position to evaluate all the facts and circumstances of a case, an appellate court must give due deference to the trial court's factual findings and limit its review to the narrow question of whether the court abused its sound judicial discretion. See *An–Car Oil Co.*, 604 F.2d at 119 ("We hesitate to second-guess a discretionary decision made by the [trial] court concerning a complicated matter with which it had an intimate working knowledge * * *.").

Applying the foregoing principles to the facts in the present case, we conclude that the trial court did not abuse its discretion in denying Fred's motion to terminate the receivership. It is well established that a receiver "is appointed to maintain the status quo regarding the property in controversy and to safeguard said property from being dissipated while the plaintiff is pursuing his remedy." *In re Gourmet Serv., Inc.* (Bankr.Ct.S.D.Ohio 1992), 142 B.R. 216, 218, citing *Sloan, supra*, 31 Ohio St. at 8. In its order denying Fred's motion, the trial court determined that "[i]t would be inequitable for the Court to terminate this receivership at the present time, but the preservation of the receivership would maintain the status quo" in the event Milo B & B's pre-bankruptcy note payments were later found to be fraudulent or preferential transfers in the bankruptcy court. The crucial issue then is whether the record supports the trial court's finding that, in the interests of equity, there was a cognizable need to preserve the status quo even though the plaintiffs' cognovit judgment had been satisfied.

The plaintiffs presented evidence to the trial court that Milo B & B's bankruptcy trustee had filed a $1 million action against them seeking to set aside Milo B & B's pre-bankruptcy note payments. The plaintiffs also presented argument and supporting legal authority to the trial court indicating that if those payments were set aside, then Fred would be liable for those payments as reinstated debt, because he was a co-maker on the note with Milo B & B. The plaintiffs' legal authority included a citation to *Harner v. Batdorf* (1878), 35 Ohio St. 113, a case that would appear to support their argument. See, also, *In re John Peterson Motors, Inc.* (Bankr.Ct.Minn.1986), 56 B.R. 588, 596, and the cases cited therein at fn. 10.

Although we express no opinion as to the ultimate merits of the plaintiffs' reinstated debt argument, we do believe it was within the trial court's broad range of discretion to consider that legal argument, in conjunction with the potential merits of the bankruptcy trustee's fraudulent transfer action, as an equitable factor weighing against terminating the receivership. Therefore, because it was within the trial court's discretion to consider the plaintiffs' legal argument in relation to all the facts and circumstances of the case, the trial court could find, with a reasonable degree of probability, that Fred would incur additional liability on the cognovit note, potentially $1 million, even though he had already satisfied the initial $814,275 judgment. Based on such a finding, the trial court could conclude that there was a cognizable need to continue the receivership in order to preserve the status quo and to protect against unfair prejudice to the plaintiffs' rights to recover on the note.

After carefully reviewing the record, we are not inclined to second-guess the trial court's discretionary decision in this regard, especially since it was made in a

complicated matter with which the trial court has had an intimate working knowledge for several years. Therefore, we find that the trial court did not abuse its discretion in denying Fred's motion to terminate the receivership. The first assignment of error is overruled.

In his second assignment of error, Fred claims that the trial court erred in granting the plaintiffs' motion to file an amended and supplemental complaint. After reviewing the relevant claim against Fred in the plaintiffs' amended complaint, we overrule the second assignment of error.

As one of the claims in their amended complaint, the plaintiffs prayed "that the Receiver be maintained over the assets and business of the Defendant Frederick P. Milo." As discussed previously, unless a receivership is expressly limited when established, the receivership continues until the trial court orders its termination. The trial court did not expressly limit the receivership over Fred's assets when it was established. Thus, unless the trial court had formally ordered its termination, the receivership over Fred's assets would have continued regardless of whether the plaintiffs were permitted to amend their complaint.

Viewed another way, the trial court's decision to continue the receivership was not in any way dependent upon the plaintiffs' filing an amended complaint or requesting such relief. Rather, the court had the discretion to continue the receivership until the court, upon its own motion or that of an interested party, determined that the receivership should be terminated and control over the property restored. Therefore, because the decision to continue the receivership over Fred's assets rested exclusively within the discretion of the trial court and was not dependent upon the plaintiffs' requesting such relief, the claim in the plaintiffs' amended complaint seeking to continue the receivership over Fred's assets, had no legal effect. Since the plaintiffs' claim, seeking to continue the receivership over Fred's assets had no legal effect, there is no injury of which Fred can complain.

In reaching this conclusion, we do not express an opinion as to whether the trial court properly allowed the plaintiffs to file the other claims that they included in their amended complaint. Those claims are not the subject of this appeal and are not ripe for this court's consideration. Instead, this appeal is limited to the issue of whether the trial court abused its discretion in denying Fred's motion to terminate the receivership. Having found that the trial court did not abuse its discretion, the first and second assignments of error are overruled.

The judgment of the trial court is affirmed.

Cook, J., concurs.

Baird, J., dissents.

*Judgment affirmed.*

Baird, Judge, dissenting.

While there may be a legitimate role for the concept of discretion in connection with receiverships, I suspect that no one would suggest that a trial court has discretion to appoint a receiver for some reason other than the list of reasons set forth in R.C. 2735.01, which provides the statutory grounds for the appointment of a receiver. By the same token, though some discretion may properly exist with regard to termination of receiverships, it seems hard to justify the continued existence of a receivership where the statutory grounds have ceased to exist, at least in the absence of truly extraordinary circumstances.

Apparently, the need to protect *other* creditors was deemed to constitute such an extraordinary circumstance by the court in *Consol. Rail Corp. v. Fore River Ry. Co.* (C.A.1, 1988), 861 F.2d 322, but it should be pointed out that the present case involves not other creditors, but the very same creditors whose debt has been paid. The only other element cited by the majority is that this is a complicated case; while that is no doubt true, I do not feel that it is a sufficient reason for what I deem to be an inequitable result. I believe that the normal rule ought to be that a receivership may not continue after the statutory grounds have ceased to exist, and that there is nothing about this case which would warrant deviation therefrom. Accordingly, I dissent.