OPINION
Claimant-appellant, MCHT-1[1] ("MCHT"), appeals from a decision of the Madison County Court of Common Pleas which denied MCHT's rental claim against Madison County Health Group, Inc. in a dissolution action. We affirm.
MCHT's claim was based on rent allegedly due under a lease between MCHT, as lessor, and Madison County Health Center, Inc., ("the Center") as lessee. In denying MCHT's claim, the trial court found a lack of arms-length contracting in the lease itself. The trial court also found that because MCHT's lease was with the Center, there was a lack of privity between MCHT and the entity which eventually succeeded to the Center, the Madison County Health Group ("the Group"). Both findings were supported by the record and require a relatively detailed explanation of the interlocking personnel involved in the various entities.
 THE PARTIES
J.D. Gammel ("Gammel") was at various times executive director of the Center, the Group, and Madison County Health Foundation, Inc. ("the Foundation").
Gammel incorporated the Foundation as a nonprofit corporation in October 1988. The Foundation was incorporated as a supporting organization under the supervision, direction, and control of the Group. Its trustees included Judge Monte White. In 1993, James E. Rolfes ("Rolfes") became the statutory agent for the Foundation. The Group was also formed in October 1988 with Rolfes and Judge Monte White, among others, as trustees. Gammel was the Group's sole incorporator.
MCHT was formed as a limited partnership on December 10, 1988, with the Foundation as the general partner and James A. Simmons ("Simmons") as the limited partner. Simmons apparently sold his limited partnership shares to private investors. MCHT was formed to own and lease the property which is the subject of these proceedings.
The Center was originally incorporated in 1977. Rolfes has been the Center's statutory agent from the date of incorporation. Gammel was listed as executive director. In March 1990, assets and liabilities of the Center were purportedly transferred to the Group.
 THE LEASE
The lease which is the subject of these proceedings was entered into on March 10, 1989 "between MCHT-1, an Ohio [L]imited [P]artnership, or its assigns, (the "Lessor") and Madison County Health Center, Inc. (the "lessee")." The fifteen-year lease was for property on South Main Street in London, Ohio to be used as a residence for severely mentally ill persons. The lease contained a non-assignment clause which prohibited the lessee (the Center) from assigning or subletting without the written consent of the lessor (MCHT). The lease was signed by Gammel, the Center's executive director, as lessee and by Judge Monte White, an officer of the Foundation, as lessor.
 THE DISSOLUTION OF MADISON COUNTY HEALTH GROUP
On October 31, 1994, Rolfes, "as trustee of the Madison County Health Group, an Ohio non-profit corporation," petitioned the trial court for a judicial dissolution pursuant to R.C.1702.52(A)(2). The statutory basis for the dissolution was insolvency. The trial court appointed a receiver. Rolfes was ordered to list assets "owned or utilized by Madison County Health Group" and to provide a list of real estate "owned by Madison County Health Foundation." (Emphasis added.) Rolfes was also directed to provide a list of the officers and trustees of "Group and Foundation."
The receiver's first report indicated that Rolfes had provided the requested information for both the Group and the Foundation. The Madison County Alcohol and Drug Addiction and Mental Health Service Board ("the "ADAMHS Board") and the Ohio Department of Mental Health ("Department of Mental Health") received leave to intervene in the dissolution as interested parties. The Department of Mental Health held a mortgage on the major asset of the Group, which was real estate not the subject of these proceedings. The ADAMHS Board had helped to finance the Group through publicly funded contract payments on behalf of the mentally disabled residents.
MCHT presented a claim for $13,650 as lessor on the lease with the Center. The ADAMHS Board and the Department of Mental Health objected to payment of this claim.[2] The receiver did not accept or reject the claim, but listed the claim as disputed and requested a hearing which was held on February 18, 1998.
At the hearing, Rolfes represented MCHT and presented testimony from Simmons, MCHT's limited partner, who had been involved with Gammel in the formation of both the Foundation and MCHT. Simmons described MCHT as a "limited partnership created to own and operate the premises that were subject to the lease." As noted above, the Foundation was the general partner in this ownership and leasing endeavor.
Simmons also testified regarding the Center and the Group. Simmons indicated that personnel of the two entities remained the same. Simmons initially testified that he dealt with the same people and was "not aware of the difference between the two." He later acknowledged that the Center and the Group were separate entities, in that both had been incorporated and retained their corporate charters during the relevant time period. Simmons also stated that to his knowledge, Judge Monte White signed the lease for MCHT as an officer of the Foundation, MCHT's general partner.[3]
Simmons stated that although there could be "problems" with the interlocking personnel of the various entities, the limited partnership formed between MCHT, the Foundation, and himself was a legal entity. No evidence was presented indicating that the Group was a successor corporation to the Center. Simmons acknowledged that the lease prohibited assignment without the lessor's consent and that no assignment of the lease had been shown. It was, however, undisputed that the Group had made payments on the lease to MCHT prior to the dissolution petition. After the hearing, MCHT submitted evidence, in the form of the Center's March 1990 minutes, of the Center's transfer of its assets and liabilities to the Group.
By judgment entry filed on February 18, 1998, the trial court determined that MCHT's claim should be rejected. The trial court took judicial notice of several other cases concerning the Foundation and the Group and related entities. The trial court noted that Gammel had incorporated both the Group and the Foundation, whose apparent purpose was to own real estate to house programs funded by the ADAMHS Board and its predecessor. The court noted that MCHT had been formed as a limited partnership with the Foundation as the general partner. The court then stated:
 The identity of the various players does not obviate the necessity for MCHT-1 to establish entitlement to rents it claims under the lease. Its lease was with [the Center]. [The Center] is still chartered. The lease was never assigned by [the Center] to [the Group]. * * * The fact that [the Group] paid the lease does not create a contractual duty to do so. Indeed, the ADAMHS Board withdrew support from [the Group] in part because [the Group] was paying for [the Foundation's] real estate acquisitions through unit charges.
The trial court found that the lack of privity between MCHT and the Group defeated MCHT's claim and held that the receiver could properly reject it. This timely appeal follows. In its sole assignment of error, MCHT claims that "the trial court erred in finding that there was a lack of privity between MCHT-1 and Madison County Health Group."
It is axiomatic that an appellate court should not substitute its judgment for that of the trial court where competent, credible evidence exists to support the judgment. State ex rel. Fleming v. Rocky River Bd. of Edn. (1997), 79 Ohio St.3d 200,205. After reviewing the record, we find that both the lease and the testimony of appellant's witness supported the trial court's determination.
A lease is a contract as well as a conveyance and is to be interpreted with reference to general contract principles. 65 Ohio Jurisprudence 3d (1990), Landlord and Tenant, Section 90. It is well-established that a contract is binding only upon the parties to the contract and those in privity with them. American Rock Mechanics v. Thermex Energy (1992), 80 Ohio App.3d 53, 58.
The lease at bar was between MCHT (appellant) and the Center. Although MCHT presented evidence that the Center had transferred assets and liabilities to the Group, there was no evidence that the Group had accepted liability under the lease. Furthermore, the evidence was uncontroverted that the lease expressly forbade assignment by the lessee. Strict rules of privity may occasionally be relaxed in appropriate cases based on factors such as practice of the parties, estoppel, or waiver. See, e.g., Brokamp v. Linneman (1923), 20 Ohio App. 199. However, the trial court was within its discretion in strictly construing this lease against the lessor, MCHT, in that there was considerable evidence of lack of an arms-length transaction between the parties.
The equitable power to appoint a receiver has been codified generally in R.C. 2735.01 and specifically for the judicial dissolution of a nonprofit corporations in R.C. 1702.52(C). This special proceeding was appropriately subject to equitable considerations. See, e.g., State ex rel. Celebrezze v. Gibbs (1991), 60 Ohio St.3d 69, 73 (court in exercising discretion regarding receivers must take into account all circumstances and facts of the case, the presence of conditions and grounds justifying relief, the ends of justice, the rights of all parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies). Because the trial court is in a better position to evaluate all the facts and circumstances, an appellate court should give due deference to the trial court's factual findings and limit its review to the narrow question of whether the court abused its sound judicial discretion. Milo v. Curtis (1994), 100 Ohio App.3d 1, 4. This can be especially important in a discretionary decision made by the trial court concerning a complicated matter with which it had intimate working knowledge. Id.
In the case at bar, the Center still existed as a corporate entity at the time of the hearing. The liability of the lessee, the Center, under the lease, had not been assigned to the Group. Accordingly, we find no abuse of discretion in the denial of MCHT's claim. Appellant's sole assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] The record does not reveal what MCHT-1 is an abbreviation for.
[2] The ADAMHS Board's objections were apparently based on the Group's use of contract payments to finance the Foundation's real estate investments.
[3] Simmons stated that Judge Monte White was also a trustee or director of the Group or the Center at various periods.