[Cite as *Moran Foods, L.L.C. v. Sunshine Stores, L.L.C.*, 2026-Ohio-1780.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Moran Foods, LLC,  :

     Plaintiff-Appellee,  :

                             :              Nos. 25 AP-205 &

                             :                 25 AP-680

v.                                   (C.P.C. No. 23CV-3574)

                             :

Sunshine Stores, LLC,               (REGULAR CALENDAR)

                             :

     Defendant-Appellant.  :

                             :

D E C I S I O N

Rendered on May 14, 2026

**On brief:** *Thompson Hine LLP, Jonathan S. Hawkins, Jack M. D'Andrea*, and *Edward G. Babbitt*, for appellee. **Argued:** *Jonathan S. Hawkins* and *Loni Foltz.*

**On brief:** *Arnold & Clifford LLP, Damion M. Clifford*, and *Michael L. Dillard, Jr.*, for appellants. **Argued:** *Michael L. Dillard, Jr.*

APPEALS from the Franklin County Court of Common Pleas

BOGGS, P.J.

{¶ 1} In case No. 25AP-205, defendant-appellant, Sunshine Stores, LLC, appeals the Franklin County Court of Common Pleas' February 12, 2025 judgment granting a motion by plaintiff-appellee, Moran Foods, LLC, for appointment of a receiver over the assets of Sunshine Stores. In case No. 25AP-680, defendant-appellant, Sunshine Stores, and non-party-appellant, Muhammed Chaudhry, the sole member of Sunshine Stores, appeal the trial court's subsequent judgment granting the motion of receiver Myron Terlecky for authority to cancel certain leases executed by Sunshine Stores. This court consolidated the appeals for purposes of oral argument and disposition. For the following reasons, we reverse the trial court's judgments.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Moran is a Missouri limited liability company that owns and licenses trademarks, service marks, logos, trade names, and slogans for use in connection with the operation of Save-A-Lot grocery stores. It is also a supplier of goods and services to operators of Save-A-Lot stores.

{¶ 3} Sunshine Stores, an Ohio limited liability company, was at all relevant times an owner and operator of Save-A-Lot stores, which it operated pursuant to license and supply agreements ("LSAs") between itself and Moran. Sunshine Stores acquired 26 stores from Moran in May 2021. Moran provided financing for Sunshine Stores' acquisition of those stores, and Sunshine Stores and Moran executed a loan agreement for the principal amount of $1,784,000, secured by a security interest in substantially all of Sunshine Stores' assets. Sunshine Stores acquired an additional ten stores from Moran in December 2021 and two final stores in March 2023. In connection with each acquisition, Moran and Sunshine Stores executed an LSA, which granted Sunshine Stores the use of Moran's intellectual property to operate the stores as Save-A-Lot stores and required Sunshine Stores to purchase certain inventory from Moran. The LSAs required Sunshine Stores to operate the Save-A-Lot stores within a defined set of program standards and obligated Sunshine Stores to periodically provide Moran with full financial information prepared by an independent certified public accountant.

{¶ 4} The LSAs afford Moran "the exclusive right of first refusal and the option to purchase" all or a portion of the assets of a store or stores (collectively, "option rights") upon the occurrence of an "option event." (Emphasis deleted.) (May 13, 2023 Compl., Ex. 1 at 13; Ex. 2 at 13; Ex. 3 at 12.) An "option event" includes Sunshine Stores closing a store or providing notice of its intent to close a store, abandonment of the license granted by the LSAs, or the termination or cancellation of the LSAs. Each LSA contains an agreement to arbitrate any controversy, claim, or dispute arising between the parties, with arbitration to proceed pursuant to Missouri substantive law and the Federal Arbitration Act.

{¶ 5} On or about May 2, 2023, Moran provided Sunshine Stores and Chaudhry written notice of default under the LSAs and the Loan Agreement and demanded that Sunshine Stores immediately cure its defaults under the LSAs and pay the outstanding obligations under the Loan Agreement. (*See* Compl., Ex. 4.2)

{¶ 6}    On May 5, 2023, Moran filed a demand for arbitration with the American Arbitration Association in *Moran Foods, LLC d/b/a Save-A-Lot Ltd. v. Sunshine Stores, LLC, et al.*, American Arbitration Association case No. 01-23-0002-0546.  Moran claimed Sunshine owed it: (1) $14,684,105.62 for inventory that Sunshine had ordered and received but not paid for; (2) $1,718,044.29 in unpaid principal under the Loan Agreement; (3) $1,227,868.37 for utility payments that Moran made on Sunshine's behalf; and (4) accrued interest.  Three days later, on May 8, 2023, Moran served on Sunshine Stores a notice captioned "Termination of LSAs, Notice of Option Event, and Demand for Immediate Turnover of Possession of the Assets and Operations of the Stores," in which it informed Sunshine Stores it was "terminat[ing] the LSAs effective immediately" and intended to exercise its option rights based on the occurrence of an option event.  (Capitalization omitted.)  (Compl., Ex. 5.)

{¶ 7}    On May 13, 2023, Moran filed its complaint in the trial court, seeking appointment of a receiver over Sunshine Stores' assets, including 38 Save-A-Lot stores, and a declaratory judgment that an option event had occurred and the LSAs had terminated. Relative to its request for appointment of a receiver, Moran alleged, in part, that Sunshine Stores was insolvent or at imminent risk of becoming insolvent, that Sunshine Stores was unjustifiably refusing to provide Moran basic financial information to which it was contractually entitled, that Sunshine Stores was refusing to honor a contractual commitment to turn over operation of the stores to Moran, and that a receiver was necessary to preserve the value of Moran's investments in Sunshine Stores' stores and the Save-A-Lot Program.

{¶ 8}    The trial court held an initial hearing regarding Moran's request for appointment of a receiver on June 1, 2023.  Prior to that hearing, the parties had entered into an interim supply agreement, which required Sunshine Stores to provide a deposit to Moran and to prepay for inventory orders, which Moran continued to fulfill.  As of the first hearing date, Moran had not decided whether to move forward with its purchase option because it had not yet requested or received financial information from Sunshine Stores. Addendum II to the LSAs afforded Moran 120 days after an option event to decide whether it would exercise its option to purchase Sunshine Stores' stores.  Because the 120-day period had not expired as of the first hearing date, the magistrate deferred issuing a decision and

stated she would set the matter for a second hearing to determine whether a receiver was warranted.

{¶ 9} Moran filed a Verified First Amended Complaint on November 27, 2023. In response, Sunshine Stores filed a counterclaim for declaratory judgment on December 11, 2023.

{¶ 10} In a letter dated May 24, 2024, Moran notified Sunshine Stores it was exercising its option to purchase the Save-A-Lot stores operated by Sunshine Stores. Under the LSAs, that notice triggered an obligation for the parties to negotiate in good faith to arrive at a purchase price. Because the parties were unable to agree on a purchase price, Moran exercised its authority under the LSAs and retained a third-party valuation expert— consulting and accounting firm Forvis Mazers—to value the stores as an ongoing concern and to determine a fair market value. Forvis determined a preliminary valuation of $16 million as of June 30, 2024. Meanwhile, Sunshine Stores continued to default on many of its store leases, actively began transitioning its stores from Save-A-Lot stores to Value Food Market stores, and began buying inventory from wholesalers other than Moran.

{¶ 11} On October 17, 2024, Moran filed a supplement to its motion for appointment of a receiver, in which it sought the appointment of a receiver over 33 stores operated by Sunshine Stores. Moran argued, "the ultimate bargained-for solution (Moran buying back the Stores) remains impossible and elusive until the assets in question are put under control of a neutral receiver with a full panoply of rights to render the Stores saleable to Moran at a fair market price and in accordance with the parties' agreements." (Oct. 17, 2024 Pl.'s Supp. to Mot. at 2.)

{¶ 12} The trial court magistrate held a second hearing on Moran's request for appointment of a receiver on November 13, 2024. The thrust of Sunshine Stores' continued opposition to Moran's request was that receivership was unwarranted because Moran failed to act on its contractual right under the LSAs to immediately take control of the stores after the occurrence of an option event.

{¶ 13} Meanwhile, in the arbitration proceeding, the arbitration panel issued an interim award on December 4, 2024, granting summary judgment for Moran on its claims for $14,684,105.62 for unpaid inventory, $1,718,044.29 in unpaid loan principal, and $1,227,868.37 for utility payments Moran made on Sunshine Stores' behalf.

{¶ 14} On January 21, 2025, prior to the magistrate issuing a decision on Moran's motion for appointment of a receiver, Moran sent Sunshine Stores notice that, as a secured party, it would be conducting a UCC sale of Sunshine Stores' assets on January 31, 2025. (Feb. 4, 2025 Def.'s Suggestion of Mootness, Ex. A.)  Schedule A to the notification listed by address 36 stores owned and operated by Sunshine Stores, and it broadly defined the property to be sold as including:

> Any and all present and future right, title, and interest in all of the assets and rights of Debtor . . . used or useful in or arising in connection with the Store and/or the Assets, including, but not limited to . . . all Accounts[,] Chattel Paper, Commercial Tort Claims, Deposit Accounts, Documents, Equipment, Fixtures, General Intangibles, Goods, Health-Care-Insurance Receivables, Instruments, Inventory, Investment Property, Letters of Credit, Letter-of-Credit Rights, Money, and Promissory Notes[,] . . . all of Debtor's leases, lease contracts, lease agreements, records, franchises, customer lists, insurance refunds, insurance refund claims, tax refunds, tax refund claims, pension plan refunds, and pension plan reversions[.]

*Id.*  It defined "assets" as "substantially all of the assets of the Store, including, without limitation, any inventory, materials, supplies, goodwill, trade fixtures, furniture, and equipment of the Store." *Id.*

{¶ 15} Sunshine Stores sought a temporary restraining order to prohibit the UCC sale, but following a hearing, the trial court summarily concluded that Sunshine Stores failed to establish its entitlement to a restraining order.  The UCC sale therefore proceeded as scheduled on January 31, 2025, and with a credit bid of $7,850,000, Moran purchased "all the assets advertised for sale, less . . . leases, lease contracts, and lease agreements with respect to" 14 of the 36 identified stores. (Feb. 4, 2025 Suggestion of Mootness, Ex. B.)

{¶ 16} On February 4, 2025, Sunshine Stores filed a Suggestion of Mootness, based on Moran's purchase of substantially all of Sunshine Stores' assets at the UCC sale.  But on February 5, 2025, without addressing the Suggestion of Mootness, the magistrate issued a decision recommending that the trial court grant Moran's motion for appointment of a receiver.  Based on the evidence presented at the two hearings, the magistrate concluded that Moran acted timely to exercise its purchase option and that the effect of Moran's decision not to take control of the stores' operations became moot when the parties

mutually agreed to allow Sunshine Stores to continue to operate the stores under the interim supply agreement. She found that Sunshine Stores' lack of cooperation and noncompliance with its obligation to continue operating the stores in accordance with the Save-A-Lot program until a purchase option was consummated provided grounds for appointment of a receiver, as it prevented the calculation of a fair-market value and precluded Moran from completing the purchase. And she described Sunshine Stores' actions as "outright subterfuge" to derail Moran's legitimate efforts to exercise its purchase option. (Feb. 5, 2025 Mag.'s Decision Appointing Receiver at 37.)

{¶ 17} The magistrate determined Moran had demonstrated by clear and convincing evidence that the circumstances of this case warranted the appointment of a receiver under R.C. 2735.01(A)(1) and (7), "to preserve Moran's purchase option rights" and "to safeguard its security interests" in Sunshine Stores' assets. *Id.* at 34. She held that Moran established, under R.C. 2735.01(A)(1), it is a creditor of Sunshine Stores, has a "probable interest in Sunshine's [Save-A-Lot] stores and their assets," *id.* at 37, and that such assets "are in danger of being lost, removed, or materially injured," *id.* at 38. She stated, "The evidence clearly establishes that . . . Chaudhry has no intention of paying his debts to Moran and will continue, absent a receiver being appointed, to make radical changes to the [Save-A-Lot] stores that will most certainly compromise Moran's secured interests." *Id.* She recommended appointment of a receiver "to oversee the business operations and assets of the remaining [33 stores] that are or were previously operated as Save-A-Lot stores." *Id.* at 39. The magistrate did not address Moran's purchase of Sunshine Stores' assets at the UCC sale.

{¶ 18} The trial court adopted the magistrate's decision and entered its order appointing a receiver on February 12, 2025. The same day, the arbitration panel issued its final award.[1]

{¶ 19} Sunshine Stores filed timely objections to the magistrate's decision regarding the appointment of a receiver on February 13, 2025, along with a motion to set aside the

---

[1] The final award for Moran in the arbitration proceeding consisted of $14,684,105.62 for unpaid inventory, plus interest in the amount of $2,953,982.09 and per diem interest of $4,827.65 after January 6, 2025; $1,718,044.29 in unpaid loan principal, plus interest in the amount of $532,421.84 and per diem interest of $369.94 after January 6, 2025; $1,227,868.37 for utility payments made by Moran, plus interest in the amount of $226,398.67 and per diem interest of $302.76 after January 6, 2025; and $639,674.33 for attorney fees.

magistrate's decision. Sunshine Stores argued that receivership was inappropriate because, except for a few lease agreements that were specifically excluded from the purchase, Moran had purchased all of Sunshine Stores' assets at the UCC sale. Before the trial court ruled on its objections, however, Sunshine Stores appealed the trial court's order appointing a receiver to this court. The trial court thereafter denied Sunshine's objections for lack of jurisdiction, based on the pending appeal.[2]

{¶ 20} On July 29, 2025, the trial court granted the receiver's motion for authority to cancel leases between Sunshine Stores and Mt. Perry 5705, LLC, and between Sunshine Stores and Sunshine Trucking Express, LLC. Neither Mt. Perry 5705, LLC, nor Sunshine Trucking Express, LLC, entered an appearance to oppose the receiver's motion. Case No. 25AP-680 is Sunshine Stores' and Chaudhry's appeal of the trial court's July 29, 2025 order. This court consolidated that appeal with case No. 25AP-205, Sunshine Stores' appeal of the order appointing a receiver, for purposes of oral argument and decision.

## II. ASSIGNMENTS OF ERROR

{¶ 21} In case No. 25AP-205, Sunshine Stores states as its single assignment of error: "The trial court abused its discretion in appointing a receiver to manage assets that no longer belonged to Appellant Sunshine Stores, LLC at the time of the Receiver's appointment." (Appellant's Brief at 1.)

{¶ 22} In case No. 25AP-680, Sunshine Stores and Chaudhry raise the following single assignment of error: "The trial court abused its discretion in granting the motion of the Receiver, Myron Terlecky[,] to reject/cancel certain leases that were not, at the time of the Receiver's motion, the property of Appellant Sunshine Stores, LLC." (Appellant's Brief at 1.)

## III. DISCUSSION

### A. Case No. 25AP-205

{¶ 23} We begin with case No. 25AP-205, Sunshine Stores' appeal of the trial court's decision appointing a receiver. R.C. 2735.01(A) sets out seven categories of cases in which

---

[2] Since the initiation of this appeal, proceedings have nevertheless gone forward in the trial court, which has since granted summary judgment in favor of Moran on its claims for declaratory judgment. The trial court held that Moran validly exercised its purchase option under the LSAs, which created a binding, contractual obligation that Sunshine Stores sell its stores as a going concern to Moran. It further declared that Sunshine Stores hindered the determination of fair market value and the work of Moran's valuation expert by refusing to timely turn over necessary financial information and that Moran's purchase option did not expire. Sunshine Stores did not appeal the trial court's entry of summary judgment.

a receiver may be appointed. Moran did not state in either its original motion for appointment of a receiver or its supplement to that motion the specific subsection of R.C. 2735.01(A) upon which it relies. R.C. 2735.01(A) provides, in part:

> A receiver may be appointed by . . . the court of common pleas or a judge thereof in the judge's county, . . . in causes pending in such [court], in the following cases:
>
> (1) In an action . . . by a creditor to subject property or a fund to the creditor's claim . . . on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds of the property or fund, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;
>
> . . .
>
> (6) When a corporation, limited liability company, partnership, limited partnership, or other entity has been dissolved, is insolvent, is in imminent danger of insolvency, or has forfeited its corporate, limited liability company, partnership, limited partnership, or other entity rights;
>
> (7) In all other cases in which receivers have been appointed by the usages of equity.

(Emphasis deleted.) A receiver may be appointed under R.C. 2735.01(A)(1) "only with respect to the particular property that is the subject of the action in which the appointment of a receiver is sought." R.C. 2735.01(B). A receiver appointed under R.C. 2735.01(A)(6) or (7), however, "may be appointed to manage all the affairs of the . . . limited liability company . . . with respect to which the appointment of a receiver is sought." R.C. 2735.01(C) and (D).

{¶ 24} A receiver "is appointed to maintain the status quo regarding the property in controversy" and to safeguard the property from dissipation while the plaintiff pursues his remedy. *In re Gourmet Serv., Inc.*, 142 B.R. 216, 218 (Bankr.S.D.Ohio 1992), citing *Cincinnati, Sandusky & Cleveland R.R., Co. v. Sloan*, 31 Ohio St. 1, 8 (1876). A person requesting a receivership must show by clear and convincing evidence that appointment of a receiver—an extraordinary remedy—is necessary to preserve the requestor's rights. *Malloy v. Malloy Color Lab*, 63 Ohio App.3d 434, 437 (10th Dist. 1989).

{¶ 25} Whether to appoint a receiver in a particular case is a question addressed to the trial court's sound discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73

(1991), citing *South Main Akron, Inc.* v. *Lynn Realty, Inc.*, 62 Ohio Law Abs. 103, 112 (2d Dist. 1951). In exercising its discretion, the trial court must consider all the facts and circumstances of the case, the existence of grounds justifying relief, the ends of justice, the rights of all interested parties, and the adequacy and effectiveness of other remedies. *Id.*, citing 65 Am.Jur.2d, Receivers, § 19-20 (1972). This court will not disturb the trial court's determination whether to appoint a receiver in the absence of an abuse of discretion. *Id.* An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 26} The trial court adopted the magistrate's finding that Moran met its burden of demonstrating entitlement to appointment of a receiver under R.C. 2735.01(A)(1) and (7), to "preserve Moran's purchase option rights and to safeguard its security interests in Sunshine's [Save-A-Lot] stores' assets." (Mag.'s Decision at 34.) The magistrate recognized that the mere fact of Sunshine Stores' defaults under the LSAs and Loan Agreement did not demonstrate the need for a receivership, but she held that Sunshine Stores' conduct while Moran was attempting to exercise its purchase option under the LSAs was sufficient to establish that need.

{¶ 27} As to application of R.C. 2735.01(A)(1), we agree with the trial court that Moran established it is a creditor of Sunshine Stores and, because of its security interest, had a probable interest in Sunshine Stores' Save-A-Lot stores and their assets. The trial court determined that Moran met its burden under R.C. 2735.01(A)(1) of establishing that Sunshine Store's Save-A-Lot stores and their assets were in danger of being lost, removed, or materially injured, based in large part on Chaudhry's established unwillingness to pay Sunshine Stores' debts to Moran and on Sunshine Stores' operation of the stores in a manner inconsistent with its obligations under the parties' agreements. The magistrate found the evidence "overwhelming" that, "unless a receiver is appointed, . . . Moran will never be able to properly execute its Purchase Option" and suggested that Chaudhry would "continue . . . to make radical changes to the [Save-A-Lot] stores that will most certainly compromise Moran's secured interests." *Id.* at 38. Although the magistrate focused primarily on R.C. 2735.01(A)(1), she also stated, "[f]or the same reasons, and in order to effectuate Moran's right to proceed with its Purchase Option, it is also proper to appoint a receiver pursuant to R.C. 2735.01(A)(7)." *Id.*

{¶ 28} On appeal, Sunshine Stores argues there was no basis for a receivership because, by the time the trial court appointed a receiver, Moran already owned everything it claimed a receiver was needed to manage. On February 2, 2026, Sunshine Stores and Chaudhry filed a notice of supplemental authority and submitted to this court the joint motion of receiver and plaintiff to authorize the entering into a purchase agreement to sell defendant's remaining stores, filed by Moran and the receiver in the trial court on December 24, 2025, and the joint reply filed in support of that motion on January 7, 2026. Sunshine Stores and Chaudhry argue that those filings include admissions that Moran purchased substantially all of Sunshine Stores' assets at the UCC sale. We may not consider the supplemental authority, however, as it is not part of the appellate record transmitted to us by the trial court in this case. Appellate review is limited to the record as it existed at the time the trial court rendered judgment. *Leiby v. Univ. of Akron*, 2006-Ohio-2831, ¶ 7 (10th Dist.), citing *Chickey v. Watts*, 2005-Ohio-4974, ¶ 14. The trial court entered the judgment appealed in this case on February 12, 2025. We may not consider subsequent filings with the trial court as part of the appellate record. Nevertheless, the appellate record does include the attachments to Sunshine Stores' February 4, 2025 suggestion of mootness, which indicated that Moran purchased, by its credit bid, "the assets advertised for sale, less the . . . leases, lease contracts, and lease agreements with respect to" 14 identified stores. (Feb. 4, 2025 Suggestion of Mootness, Ex. B.) Moran has not disputed that fact.

{¶ 29} The magistrate's findings in support of a receivership focused on supposed impediments to Moran's ability to execute its option to purchase all or a portion of the stores' assets under the LSA. The magistrate based those findings, which the trial court adopted, on the circumstances that existed as of the November 2024 second hearing date. Were we viewing the circumstances solely from that date, we would have no trouble concluding that the trial court's decision to appoint a receiver was reasonable, but the UCC sale that occurred thereafter, but before the trial court issued its decision, drastically altered the calculus regarding the necessity for receivership. At the UCC sale, Moran purchased "[a]ny and all present and future right, title, and interest in all of the assets and rights of [Sunshine Stores] used or useful in or arising in connection with" 36 identified stores, excluding only the leases applicable to 14 of those stores. After January 31, 2025, Moran

owned much, if not all, of what it was entitled to purchase through operation of its option under the LSAs.

{¶ 30} The trial court was undoubtedly aware of the UCC sale, as it conducted a hearing on Sunshine Stores' motion for a temporary restraining order, and that Moran had been the successful purchaser at the UCC sale, based on Sunshine Stores' suggestion of mootness. Yet neither the magistrate nor the trial court took the UCC sale into account in deciding Moran's motion for appointment of receiver.

{¶ 31} Moran's purchase included assets in which it had a security interest and which it had independently sought to purchase through its purchase option under the LSAs. Moran's ability to execute its purchase option is of more limited consequence after Moran purchased substantially all of Sunshine Stores' assets, for an amount likely far less than the fair market value it would have been required to pay for those assets under the LSAs. Further Moran's UCC sale purchase necessarily and substantially reduced, if not completely eliminated, the risk of the sold assets being lost, removed, or materially injured, to Moran's detriment—a requirement for appointment of a receiver under R.C. 2735.01(A)(1). Nevertheless, Moran argues that a receivership remained appropriate because it did not buy *all* of Sunshine Stores' assets at the UCC sale.[3] Even crediting Moran's argument that Sunshine Stores retained some assets over which Moran retained a security interest and which are subject to Moran's purchase option, the sale of substantially all of Sunshine Stores' assets to Moran at the UCC sale nevertheless altered the equities weighing in favor of and against appointment of a receiver.

{¶ 32} The trial court adopted the magistrate's decision that a receiver be appointed "to oversee the business operations and assets of the remaining thirty-three (33) Sunshine locations that are or were previously operated as Save-A-Lot stores under the [LSAs]." (Mag.'s Decision at 39.) The trial court appointed a receiver of "all the Assets of Sunshine Stores, LLC," in part to "preserve the value of the Assets, including, to the extent financially prudent, the business operations of Sunshine, and to continue the operations of Sunshine during the pendency of this litigation." (Feb. 12, 2025 Order Appointing Receiver at 2-3.) Doing so without first considering the UCC sale, which resulted in the transfer of ownership

---

[3] As examples of such intangible assets, Moran lists goodwill, contracts, and employee relations, but the notice of the UCC sale specifically included goodwill, certain contracts, and general intangibles among the assets to be sold.

of the bulk of Sunshine Stores' assets—including the 33 stores addressed in the magistrate's decision—to Moran, contravened the trial court's obligation to consider all the facts and circumstances to determine whether to appoint a receiver. By not considering Moran's purchase of substantially all of Sunshine Stores' assets through its independent remedy of a UCC sale, the trial court's decision was unreasonable and constituted an abuse of discretion. Accordingly, we sustain Sunshine Stores' sole assignment of error in case No. 25AP-205, and we reverse the trial court's judgment appointing a receiver.

### B. Case No. 25AP-680

{¶ 33} We now turn to the consolidated appeal, case No. 25AP-680, which stems from the trial court's judgment entry and order authorizing the receiver to cancel certain contracts between Sunshine Stores and third-parties. Because we have concluded that the trial court erred by appointing a receiver, without considering the effect of the UCC sale, it follows that we must sustain Sunshine Stores' single assignment of error in case No. 25AP-680 and reverse the trial court's judgment authorizing the receiver to cancel contracts executed by Sunshine Stores.

## IV. CONCLUSION

{¶ 34} Having sustained Sunshine Stores' assignments of error in both case No. 25AP-205 and case No. 25AP-680, we reverse the judgments of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with this decision.

*Judgments reversed*
*and cause remanded.*

EDELSTEIN and DINGUS, JJ., concur.