# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| VICTORIA MORGAN, | : | APPEAL NO. C-250217 |
| | | TRIAL NO. DR-1801556 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| MARK G. JONES, | : | |
| | | |
| Defendant-Appellant. | : | |
| | : | |
| PRODIGY PROPERTIES, LLC, | : | |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | |
| | : | |
| MARK G. JONES, | : | |
| Trustee of the Mark G. Jones Revocable Trust dated July 30, 1998, | : | |
| Defendant-Appellant, | : | |
| and | : | |
| VICTORIA MORGAN, | : | |
| Trustee of the Victoria Morgan Revocable Trust dated April 20, 1999, as amended September 10, 2002, | : | |
| Defendant-Appellee. | : | |
| | : | |

This cause was heard upon the appeal, the record, and the briefs. Also before the court are Victoria Morgan's December 19, 2025 "Motion Pursuant to Loc.R. 23 to Declare Mark G. Jones a Vexatious Litigator," and the portion of her September 15,

2025 "Motion to Strike Appellant's Brief and for Sanctions" that the court deferred in its order of October 10, 2025.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and vacated in part. The court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that all costs be taxed to appellant Mark G. Jones. And the court orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

Further, for the reasons set forth in the same Opinion filed this date, the court denies the outstanding portion of appellee Victoria Morgan's September 15, 2025 motion requesting sanctions against appellant Mark G. Jones, along with her December 19, 2025 motion to find appellant Mark G. Jones to be a vexatious litigator under Loc.R. 23(B).

**To the clerk:**
**Enter upon the journal of the court on 6/26/2026 per order of the court.**

**By:**_____
 **Administrative Judge**

[Cite as *Morgan v. Jones*, 2026-Ohio-2432.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| VICTORIA MORGAN, | : | APPEAL NO. | C-250217 |
| | | TRIAL NO. | DR-1801556 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| MARK G. JONES, | : | | |
| Defendant-Appellant. | : | | |

| | |
|---|---|
| | : |
| PRODIGY PROPERTIES, LLC, | |
| | : |
| Plaintiff-Appellee, | |
| | : |
| vs. | : |
| MARK G. JONES, Trustee of the Mark G. Jones Revocable Trust dated July 30, 1998, | : |
| | : |
| Defendant-Appellant, | : |
| and | : |
| VICTORIA MORGAN, Trustee of the Victoria Morgan Revocable Trust dated April 20, 1999, as amended September 10, 2002, | : |
| | : |
| Defendant-Appellee. | : |
| | : |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part and Vacated in Part; Motion for Sanctions Denied; Motion to Declare Appellant a Vexatious Litigator Denied

Date of Judgment Entry on Appeal: June 26, 2026

*Law Office of M. Erin Wilkins, LLC, M. Erin Wilkins* and *Emily C. Robbins*, for Plaintiff-Appellee Victoria Morgan,

*Mark G. Jones*, pro se.

CROUSE, Judge.

{¶1} Appellee Victoria Morgan divorced appellant Mark G. Jones seven years ago. They have been embroiled in proceedings to divide up their marital assets, including the home they once shared, ever since. This appeal arises from the final chapters of that tale, in which the domestic-relations court finally discharged the receiver it had appointed to sell the house.

{¶2} Jones now argues that the domestic-relations court's order discharging the receiver was invalid, both because it contained unlawful terms and because Jones received insufficient notice and opportunity to be heard prior to the order's entry. He also argues that the domestic-relations court should have granted his motion for a new trial on the receiver's discharge. For her part, Morgan asks that we sanction Jones for citing a pair of fictitious cases in his brief, and that we declare him a vexatious litigator for filing numerous meritless appeals from their divorce proceedings.

{¶3} For the reasons set forth below, we affirm the domestic-relations court's order discharging the receiver, and we vacate as void its order denying Jones's motion for a new trial. And while we acknowledge Morgan's concerns about Jones's conduct, we deny her motions for sanctions and to declare Jones a vexatious litigator.

I. BACKGROUND

A. Prior Proceedings

{¶4} Morgan and Jones were once married and owned, as tenants in common, a residence in Mount Adams ("the house"). In 2018, Morgan filed for divorce. In 2019, the domestic-relations court entered a decree of divorce, which instructed the parties to place the house for sale, but allowed either party to exercise a right of first refusal to purchase the house pursuant to terms in their antenuptial agreement. Jones appealed, but we affirmed the decree. *See Morgan v. Jones*, 2020

Ohio App. LEXIS 3200 (1st Dist. Sept. 2, 2020) ("*Jones I*").

{¶5} Getting the house up for sale proved difficult. The domestic-relations court found that Jones was "unwilling or unable to cooperate in the sale" of the property, and so placed the house in receivership and appointed Valerie Zummo as receiver with authority to sell it. Again Jones appealed, and again we affirmed in *Morgan v. Jones*, 2022-Ohio-1831 (1st Dist.) ("*Jones II*").

{¶6} Zummo hired Prodigy Properties, LLC, ("Prodigy") to help sell the house. Eventually, Zummo withdrew as receiver, and the domestic-relations court substituted Prodigy, "by and through its Managing Director, Jeff Lane," in her place.

{¶7} When Jones did not remove certain encumbrances on the house, the receiver filed a "Complaint to Sell Real Estate" in the general division of the Hamilton County Court of Common Pleas, in the case numbered A-2301388. That action was then consolidated with the divorce action in the domestic-relations division, numbered DR-1801556. The domestic-relations court entered an order authorizing the receiver to sell the property, free and clear of certain interests and encumbrances. The sale-authorization order also provided that "[a]ny personal property not removed from the Property at the time of the Closing shall be deemed abandoned."

{¶8} Jones appealed from the sale-authorization,[1] attacking the domestic-relations court's order substituting Prodigy as receiver, alleging that Jones had not received notice of the hearing on the sale order, and contending that the domestic-relations court had failed to enforce his antenuptial agreement. We rejected his arguments and affirmed both the sale-authorization and receiver-substitution orders.

---

[1] Jones actually filed *two* appeals from this order. One of these, which Jones filed as trustee on behalf of the Mark G. Jones Revocable Trust Dated July 30, 1998, was dismissed on the ground that Jones was not a licensed and registered attorney permitted to represent the trust in court. *See* Entry of Dismissal, *Morgan v. Jones*, No. C-240067 (1st Dist. Feb. 21, 2024) ("*Jones VI*").

*Morgan v. Jones*, 2024 Ohio App. LEXIS 3994, *2-5 (1st Dist. Nov. 6, 2024) ("*Jones VII*").

{¶9} Throughout this time, the receiver was attempting to sell the house. The receiver found a buyer but could not obtain title insurance while Jones's appeal of the sale-authorization order remained pending. But on November 15, 2024, nine days after this court affirmed the sale-authorization order in *Jones VII*, the receiver and buyers closed on the house.

{¶10} Morgan filed a copy of the receiver's final report in the domestic-relations court on November 27. Appended to the report was a copy of the closing statement and settlement sheet, which indicated the contract sale price for the house was $850,000. However, the proceeds were reduced by $843,290.89 to pay off a mortgage on the property held by Wells Fargo Home Mortgage, and by $20,476.49 to pay county property taxes that had accrued during 2024. In addition, Prodigy received a $34,000 commission and $5,623.79 in reimbursement for expenses. "Sibcy Cline Realtors (Hyde Park)" received a $17,000 commission. When added to the $6,287.75 in ordinary closing expenses (e.g., title insurance and recording fees), the expenses and obligations totaled $926,678.92—far more than the $850,000 sale price. To cover the difference, the settlement sheet indicates that the seller paid $73,006.67 cash at closing, and the buyers paid the remaining $3,672.25.

{¶11} In its final report, the receiver indicated that, following the closing, the "receivership estate no longer contain[ed] any assets," "was insolvent," and "had no funds derived from income from the Property."

{¶12} Nothing further happened for several weeks. On December 16, Morgan filed a motion to discharge the receiver, which she acknowledges was never properly served on Jones. The domestic-relations court granted Morgan's motion and

discharged the receiver in an entry two days later, on December 18, 2024 (the "discharge order").

{¶13} On January 15, 2025, Jones, through counsel, filed a "Motion for New Trial on 12/18/2024 Order Discharging Receiver." Several weeks after that, Jones's counsel sought leave to withdraw and asked that the domestic-relations court set a hearing on Jones's new-trial motion (and a pending contempt charge[2]) "on or after 3/17/2025," so that Jones would have time to prepare. The domestic-relations court granted the motion to withdraw and scheduled the hearing for March 17. In a later reply, Jones sought to withdraw his request for a hearing, but the domestic-relations court denied this request and stated that it would hold a hearing on March 19, 2025. Jones sought to continue the contempt portion of the hearing, but, when Morgan withdrew the contempt charge, the domestic-relations court denied his request for a continuance. Jones asked to appear remotely for what was now a hearing on the new-trial motion alone, but the domestic-relations court denied this request as well.

{¶14} March 19 came, and Jones failed to appear at his hearing. Two days later, on March 21, the domestic-relations court entered an order dismissing Jones's new-trial motion (the "new-trial order"). The court stated that it was dismissing Jones's motion based on his failure to appear, but said that, even if the motion had "not [been] dismissed for his lack of appearance," the court "would [have] den[ied] it on the merits."

---

[2] This contempt charge related to an incident in October 2024, in which neighbors observed Jones, a locksmith, a plumber, and his dog, attempting to enter the house without the receiver's permission. The neighbors called the police, who took Jones into custody pursuant to an order attaching Jones's body for a *prior* contempt of the domestic-relations court. On October 21, 2024, Morgan filed a new contempt charge based on Jones's attempted entry into the house, which was to be heard on March 17, 2025.

### *B. This Appeal*

**{¶15}** Jones filed a notice of appeal on April 11, 2025, seeking to challenge both the December 18 discharge order and the March 21 new-trial order.

**{¶16}** On September 15, 2025, Morgan filed a motion asking this court to strike Jones's principal brief and impose sanctions. In it, Morgan identified two citations to "phantom cases," which she suggested were a byproduct of hallucinatory artificial-intelligence software. On October 10, a motions panel of this court denied Morgan's motion to strike Jones's brief, explaining that the accuracy of his citations went to the merits of his arguments and was "not cause to strike the brief." However, the motions panel did not resolve the request for sanctions, electing to defer the issue to this panel.

**{¶17}** On December 19, 2025, after briefing was complete, Morgan filed a motion for this court to declare Jones a vexatious litigator pursuant to Loc.R. 23(B). Morgan argued that Jones's repeated appeals from the divorce proceedings have been frivolous and/or filed for the purpose of harassment or delay. Jones filed a memorandum in opposition to that request.

**{¶18}** Thus, this court now has before it (1) the merits of Jones's appeal from the discharge and new-trial orders, (2) the outstanding portion of Morgan's September 15 motion seeking sanctions, and (3) Morgan's December 19 motion for this court to declare Jones a vexatious litigator.

## II. JONES'S ASSIGNMENTS OF ERROR

**{¶19}** We begin with Jones's appeal. He raises two assignments of error: the first challenging the March 21, 2025 new-trial order, and the second challenging the December 18, 2024 discharge order underlying it. For the reasons set forth below, we vacate the former as void and affirm the latter.

9

### *A. New-Trial Order*

**{¶20}** Like Jones, we will work backwards, beginning with the March 21 order denying Jones's motion for a new trial. We lack the power to reach the merits of the new-trial order, however. Jones's new-trial motion was a nullity from the beginning, and the order denying it therefore void ab initio.

**{¶21}** A motion for a new trial under Civ.R. 59(B) "is a nullity unless it is filed after a trial has occurred." *See Fougere v. Estate of Fougere*, 2017-Ohio-7905, ¶ 14 (10th Dist.); *see also L.A. & D., Inc. v. Bd. of Lake Cty. Commrs.*, 67 Ohio St.2d 384, 387 (1981). Because Civ.R. 59 provides no definition of what constitutes a "trial," we look to caselaw. In *First Bank of Marietta v. Mascrete, Inc.*, 1997-Ohio-158, the Ohio Supreme Court held that, to determine whether a proceeding was a "trial" for purposes of Civ.R. 59, we should consider whether "the indicia of trial substantially predominate in the proceeding." *Id.* at ¶ 25. Those indicia can include some or all of the following:

> (1) whether the proceeding was initiated by pleadings, (2) whether it took place in court, (3) whether it was held in the presence of a judge or magistrate, (4) whether the parties or their counsel were present, (5) whether evidence was introduced, (6) whether arguments were presented in court by counsel, (7) whether issues of fact were decided by the judge or magistrate, (8) whether the issues decided were central or ancillary to the primary dispute between the parties, (9) whether a judgment was rendered on the evidence.

*Id.* at ¶ 26.

**{¶22}** In general, Ohio courts have found a trial has taken place only in cases "where there has been an in-court hearing succeeded by a judgment ruling on the issues argued and evidence heard at the hearing." *Gallick v. Franklin Cty. Bd. of*

*Revision*, 2018-Ohio-818, ¶ 21 (10th Dist.), citing *Fougere*, 2017-Ohio-7905, at ¶ 15 (10th Dist.). Thus, in *Wolf-Sabatino v. Sabatino*, 2012-Ohio-6232, ¶ 14 (10th Dist.), the Tenth District held that a motion for a new trial was proper where a "hearing took place in court, in the presence of a judge, with the parties, their counsel, and their expert witnesses present," and where, at that hearing, "parties' counsel presented arguments to the court." *See also*, *e.g.*, *Haase v. Haase*, 64 Ohio App.3d 758, 760-762 (8th Dist. 1990). And in *Mascrete* itself, the Court held that an adversarial, in-person contempt hearing that led to a finding of contempt constituted a "trial" for purposes of Civ.R. 59(B). *Mascrete* at ¶ 27.

**{¶23}** By contrast, courts have said that a Civ.R. 59 motion is improper where "no proceedings occurred [at which] the parties or counsel presented evidence and argument in court to a trial judge or magistrate." *Gallick* at ¶ 21. Thus, they have held that a motion for new trial will not lie to challenge orders granting summary judgment, *L.A. & D.*, 67 Ohio St.2d at 387; dismissing an action for failure to prosecute without a hearing, *Fougere*, 2017-Ohio-7905, at ¶ 7, 15 (10th Dist.); entering a default judgment following a "non-oral hearing," *Tipton v. Goodnight*, 2006-Ohio-113, ¶ 9 (4th Dist.); or denying a motion to intervene, *Earth Mobile, Inc. v. U.S. Bank, N.A.*, 2023-Ohio-3354, ¶ 34 (8th Dist.), and *Savage v. Cody-Zeigler, Inc.*, 2006-Ohio-2760, ¶ 18 (4th Dist.).

**{¶24}** The determination of whether a proceeding constituted a "trial" is not a categorical one; it turns on the character of the proceedings that actually occurred. Even judgments or orders that might usually be entered following a "trial" cannot be challenged by a Civ.R. 59 motion if no trial *in fact* occurred. So the Tenth District held that a Civ.R. 59 motion would not lie to challenge the outcome of an administrative appeal where no hearings took place and "no proceedings occurred where the

parties or counsel presented evidence and argument in court to a trial judge or magistrate." *Galick* at ¶ 21. And both the Eighth and Tenth Districts have held that Civ.R. 59 is unavailable to challenge a decree of divorce, if that decree was entered pursuant to a settlement agreement, rather than a trial. *Shepherd v. Shepherd*, 2018-Ohio-1037, ¶ 22 (10th Dist.); *Diguilio v. Diguilio*, 2003-Ohio-2197, ¶ 39-40 (8th Dist.).

**{¶25}** In Jones's case, the domestic-relations court held no hearing prior to discharging the receiver. No attorneys were present in court, and no evidence offered before a judge or magistrate. Indeed, the gravamen of Jones's motion was that he *never received* a hearing. Because Civ.R. 59 focuses on whether a trial was *actually held*, and because nothing resembling a trial occurred prior to the discharge order, we hold that Jones's January 15 motion for new trial was a legal nullity.

**{¶26}** A litigant who never received a trial is not without a remedy. Appeal is available for errors appearing on the record, and Civ.R. 60(B) can accommodate certain challenges that require additional evidence. But Jones moved for a "new trial" where a first trial had never occurred. Because that motion was a nullity, so, too, was the domestic-relations court's order denying it. We have no jurisdiction to review and reverse or affirm such an order. Instead, the appropriate remedy is to recognize that the order was void and vacate it. *See State v. Johnson*, 2019-Ohio-2024, ¶ 6 (1st Dist.) (court of appeals lacked jurisdiction to review an order that was "a legal nullity," but could vacate it as void ab initio).

**{¶27}** Accordingly, we vacate the new-trial order, rendering Jones's first assignment of error moot.

### B. Discharge Order

**{¶28}** Jones's second assignment of error challenges the December 18 order

12

discharging the receiver and terminating the receivership.[3]

**{¶29}** Receivers are officers of the court, appointed in equity to manage, preserve, and sometimes dispose of property in controversy during litigation. *See* 1 Clark, *A Treatise on the Law and Practice of Receivers*, § 11(a), at 13 (3d Ed. 1959) (hereinafter "*Clark on Receivers*"); *Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 23 (1st Dist.). The decision whether to discharge a receiver is entrusted to the sound discretion of the trial court, and we review that decision for an abuse of discretion. *See Fifth Third Bank v. Dayton Lodge, L.L.C.*, 2013-Ohio-5755, ¶ 52 (2d Dist.), citing *Milo v. Curtis*, 100 Ohio App.3d 1, 8 (9th Dist. 1994); *Dyczkiewycz v. Tremont Ridge Phase 1 Ltd. Partnership*, 2012-Ohio-5173, ¶ 26 (8th Dist.). But discretion is always bounded by law, so a trial court necessarily abuses its discretion if it discharges or fails to discharge a receiver in a manner contrary to law. *See Cincinnati, Sandusky & Cleveland RR. Co. v. Sloan*, 31 Ohio St. 1, 13-14 (1876); *see also Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38-39.

**{¶30}** We will divide Jones's challenges to the discharge order into three groups: (1) those concerning his alleged lack of notice and a hearing prior to the discharge, (2) those challenging provisions of the discharge order itself, and (3) those addressing the domestic-relations court's prior orders, decisions, and proceedings.

---

[3] Ordinarily, we would lack jurisdiction to review the discharge order. The order was entered on December 18, 2024, and Jones did not appeal it until April 11, 2025. That delay far exceeds the usual 30 days allotted by App.R. 4(A)(1). And Jones's new-trial motion could not have tolled his time to appeal under App.R. 4(B)(2)(b), because that motion was a nullity. *Compare Fougere*, 2017-Ohio-7905, at ¶ 14 (10th Dist.). But in this case, Jones's deadline to appeal the December 18 order never began to run, because the record contains no indication Jones was ever served with that order. The order itself contained no instruction to the clerk to serve Jones, and we can find no contemporaneous certificate of service on the record. Thus, we must conclude that the clerk never "completed service of notice of the [December 18] judgment" upon Jones, so that the 30-day deadline to appeal did not begin to run under App.R. 4(A)(3).

*1. Notice & Opportunity to Be Heard*

**{¶31}** Jones first contends that he was not given adequate notice and an opportunity to be heard before the domestic-relations court entered its discharge order.

a.

**{¶32}** As a threshold matter, Morgan contends that neither notice nor hearing were required prior to discharging the receiver. We disagree.

**{¶33}** Civ.R. 66 provides that receiverships must be administered "in the manner provided by law and as provided by rules of court." The "provided by law" requirement generally refers to R.C. Ch. 2735, which governs many aspects of receiverships, as well as any other relevant statutes. The "rules of court" piece empowers courts to adopt local rules to further structure receivership proceedings. Civ.R. 66 effectively incorporates such rules by reference.

**{¶34}** R.C. 2735.01(A) provides the authority to appoint a receiver. Once appointed, their receivership continues until the court terminates it. *See Milo*, 100 Ohio App.3d at 6; *Fifth Third*, 2013-Ohio-5755, at ¶ 24 (2d Dist.); *Hoover-Bond Co. v. Sun-Glow Indus., Inc.*, 57 Ohio App. 246, 252 (3d Dist. 1936). In general, discharge of a receiver and termination of the receivership are proper when, due to a change in circumstances, "there is no longer any necessity of continuing the receivership." 3 *Clark on Receivers*, § 692.1(b), at 1276; *see also* 65 Am.Jur.2d, Receivers, § 93 (2024); *State ex rel. Miller v. Kroger*, 235 Ind. 556, 561-562 (1956). And although R.C. Ch. 2735 does not expressly provide authority to discharge a receiver, "the power to vacate the appointment is clearly implied in the power to appoint." *See Sloan*, 31 Ohio St. at 12; *accord Milo* at 6.

**{¶35}** Here the parties dispute what procedures are required when a court

terminates a receivership. Per Civ.R. 66, if a statute set forth procedures for discharging receivers, it would govern—so long as it satisfied the basic requirements of due process. But the Revised Code provides no procedures for discharging a receiver either generally or in the domestic-relations context. Further, courts could provide procedures for discharging receivers in local "rules of court." *Id.* A number of Ohio's courts of common pleas have done just that by promulgating rules that govern the discharge process.[4] Unfortunately, neither the General Division nor the Domestic Relations Division of the Hamilton County Court of Common Pleas have done so.

{¶36} In the absence of a controlling statute or local rule, the Ohio Supreme Court has said that the "usages of courts of equity" govern "the manner of . . . discharging receivers." *See Sloan* at 12. And, as a leading treatise on receivers explains, equity requires that "[n]otice [of a proposed discharge] should be given to all parties to the suit and to creditors interested in the distribution, even in the absence of a statute or a court rule on the subject." 3 *Clark on Receivers*, § 693, at 1277; *see also Miller v. Everest*, 212 N.W.2d 522, 524 (Iowa 1973), citing *Farmers' Savs. Bank v. Pomeroy*, 211 Iowa 337, 339 (1930); *Atty. Gen. ex rel. Commr. of Ins. v. Lapeer Farmers' Mut. Fire Ins. Assn.*, 318 Mich. 60, 76 (1947) ("Such an account would be acceptable to the court only after proper notice to interested parties who shall have an opportunity to be heard thereon.").

{¶37} Such notice is essential to ensure fundamental fairness and due process.

---

[4] The local rules of the Butler County Court of Common Pleas provide commendable clarity to this area: "All receivers shall file a final report within 30 days from the time at which their trust and their duties may be regarded as performed and completed," and any "[e]xceptions to the accounts of receivers . . . must be filed within 20 days after the accounts are filed." Butler C.P., Gen.Div., Loc.R. 5.19(L), (M). In Montgomery County, the local rules explicitly provide that a hearing to settle the receiver's accounts should be held "within 30 days of the filing of the receiver's final inventory." Mont. Co. C.P.R. 6.10(D). And although the local rules in Franklin County do not include as clear a timeline for objections, they do set forth the manner and timing for filing a receiver's "final report to the court and creditors," along with a final fee application. Franklin C.P., Gen.Div., Loc.R. 66.12.

Discharging a receiver traditionally involves (1) "fixing of the receiver's fees," (2) "distribution generally of the money in [the receiver's] hands," and (3) "accepting of the receiver's final report." 3 *Clark on Receivers*, § 693, at 1277; 3 *id.*, § 699.1, at 1285 ("on his removal or discharge, the receiver must . . . report and account for all the property he has received"); *Fifth Third*, 2013-Ohio-5755, at ¶ 24 (2d Dist.) ("approval [of the receiver's final account] ordinarily precedes the receiver's discharge"). So, any individual with claims to or against the receivership assets, or who wishes to challenge the receiver's fees, must bring their claims prior to discharge. Once discharge is finalized, such claims may be too late—there will be no more receiver to sue and no more assets in receivership from which to "satisfy and discharge any judgment that might be rendered against [the receiver] in his official capacity." *See* 2 *Clark on Receivers*, § 422, at 708; *see also* High, *A Treatise on the Law of Receivers*, § 848, at 994 (4th Ed. 1910);[5] *Madorsky v. Suburban Homes Co.*, 45 Ohio App. 83, 85 (8th Dist. 1933); *Norman v. Trison Dev. Corp.*, 1992 OK 67, ¶ 8; *Brown v. Gay*, 76 Tex. 444, 447 (1890); *In re Weldon F. Stump & Co., Inc.*, 337 B.R. 636, 638 (Bankr.N.D.Ohio 2005) ("the discharge of a receiver has the effect of releasing them from any further liability incident to the receivership").

{¶38} Morgan argues that notice would have been pointless in this case because the receivership estate was empty: the house was sold and no proceeds remained to satisfy any claims. But even where a receivership is insolvent, a court of equity has tools to redress a wayward receiver's improper use of receivership assets. A court of equity could, for example, "surcharg[e] the receiver's accounts for losses incurred through the receiver's mismanagement or negligence," and then withhold

---

[5] Available at https://hdl.handle.net/2027/co01.ark:/13960/t9h429164.

final approval until the receiver has balanced them by paying back the surcharged amount. *See* 80 Ohio Jur.3d, § 184 (2026), citing *Shawnee Lumber Co. v. Phillips*, 29 Ohio Dec. 58, 61-62 (C.P. 1917); 2 *Clark on Receivers*, § 419, at 706.[6]

**{¶39}** We therefore hold that, before a trial court finally discharges a receiver and terminates a receivership, it must *at least* provide interested parties notice of its incipient termination and an opportunity to object. This baseline, rooted in traditional notions of equity and due process, applies even in the absence of a statute or local rule providing for more specific procedures, and even if the receivership is insolvent.

b.

**{¶40}** The question, then, is whether Jones received adequate notice of the imminent discharge order and opportunity to raise his objections. On the facts of this case, we hold he did.

**{¶41}** As we have already noted, both the Ohio Revised Code and the local rules of the Hamilton County Court of Common Pleas lack provisions governing the discharge of receivers. "[I]n the absence of statutory guidance" or a rule of court, "'the constitutional due process principle supplies the rule'" for determining adequacy of notice. *See Hunt v. Alderman*, 2025-Ohio-2944, ¶ 15, quoting *Knickerbocker Properties, Inc., XLII v. Delaware Cty. Bd. of Revision*, 2008-Ohio-3192, ¶ 17. And

---

[6] *See also, e.g., Credit Mgrs. Assn. of S. Cal. v. Kennesaw Life & Acc. Ins. Co.*, 25 F.3d 743, 751 (9th Cir. 1994), quoting *Aviation Brake Sys., Ltd. v. Voorhis*, 133 Cal.App.3d 230, 235 (1982) ("'upon the receiver's final report and account, the receiver in his personal capacity may be surcharged for losses to the receivership estate based upon his misconduct or mismanagement'"); *McPherson v. United States Physicians Mut. Risk Retention Group*, 99 S.W.3d 462, 481 (Mo.App. 2003) (holding that "a trial court supervising an insurance company in receivership under the Insolvency Code has the inherent power to surcharge" the account of a "special deputy receiver"); *Citizens' Trust Co. v. Wheeling Can Co.*, 199 Ind. 311, 317 (1927) ("The court did not err in ordering the receiver to repay to the funds of the receivership the payments which the court found and adjudged to be unauthorized, and which were not approved."); *Haines v. Buckeye Wheel Co.*, 224 F. 289, 297-298 (6th Cir. 1915) (surcharging receiver's account so that he would "repay and restore to the trust fund the sum of $2,000 heretofore allowed to him as compensation," then ordering him to disburse those funds); *State ex rel. Pope v. Germania Bank*, 103 Minn. 129, 143 (1908).

the Constitution guaranteed Jones only "notice reasonably calculated, under all the circumstances," to apprise him of the need to present his objections, and a "reasonable time" in which to do so. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In applying this rule, we must have "due regard for the practicalities and peculiarities of the case." *Id.* at 314; *see also H3re, L.L.C. v. Anderson*, 2020-Ohio-4974, ¶ 10 (1st Dist.) ("Reasonable notice is determined on a case-by-case basis."). The bottom line, as the United State Supreme Court recently reiterated (in a very different context), is that an individual at risk of losing property or liberty must "receive notice" of the risk they face "within a reasonable time and in such a manner as will allow them to actually seek . . . relief." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam); *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025) (per curiam).

**{¶42}** We begin by noting that, ideally, the domestic-relations court would have provided notice that was explicit and unambiguous. For example, the domestic-relations court could have set forth deadlines in its order appointing or describing the duties of the receiver. Or it might have issued an entry notifying the parties that the receiver had filed its final report and ordering them to object by a date certain or forever hold their peace.

**{¶43}** The procedures in this case, however, were not ideal. Still, if Jones had (1) actual or constructive notice from which a reasonable person would have understood he needed to promptly object to the receiver's discharge or account and (2) a reasonable time in which to raise such objections, then the requirements of due process were satisfied, and the domestic-relations court could discharge the receiver.

**{¶44}** Morgan's motion to discharge the receiver, which would ordinarily have constituted sufficient notice, was insufficient in this case. Morgan admits that she never properly served Jones with her December 16 motion, and the record does not

18

show that Jones actually received a copy in a timely manner. And even if Jones received actual notice of Morgan's motion, the *two days* between it and the domestic-relations court's December 18 discharge order would not have been sufficient opportunity to respond in this case. *Compare Lindsay v. Jackson*, 2000 Ohio App. LEXIS 4043, *8 (1st Dist. Sep. 8, 2000) ("courts have held that notice provided on the same day as the hearing is insufficient to meet the requirements of due process"); *A.A.R.P.* at 95 ("Under these circumstances, notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster.").

**{¶45}** Rather, we hold that, on the particular facts and "peculiarities of [this] case," the November 27, 2024 filing of the receiver's final report provided Jones with the necessary notice. The document's caption, "FINAL REPORT OF RECEIVER, CERTIFICATE AND REPORT OF SALE," clearly indicated that the receiver believed there was nothing left for it to do. And its contents made clear that the logical next step was discharge, absent objections.

**{¶46}** The final report indicated that the purpose of the receivership was complete and that no receivership assets remained for disbursal. The purpose of the receivership was to facilitate the division of marital property by selling the house. The house had been the only asset in receivership, and the report states that it was sold. And the final report explained that there were no proceeds to disburse: after paying the receiver, closing costs, and creditors, "[t]he receivership estate no longer contain[ed] any assets," "was insolvent," and contained "no funds derived from income from the Property."

**{¶47}** The report also settled the question of fees. The settlement statement detailed the outstanding fees owed to the receiver, which the statement indicated were

already paid. The fees set forth in the settlement statement aligned with the six percent commission the receiver had been promised in the appointment order.[7] The statement indicated that the receiver claimed $5,623.79 in reimbursement for expenses. And the statement indicated that all of these fees and expenses had been *fully paid*. The receiver indicated no remaining balance.

**{¶48}** Thus, the receiver's final report indicated (1) that the purpose of the receivership had run its course, (2) that the receivership was insolvent and contained no assets, (3) that there were no assets for the receiver to disburse, and (4) that the receiver claimed fees of $51,000 (for itself and the real-estate broker) and expenses of $5,623.79, which were already paid. While the report may not have taken the final step of *explicitly* requesting discharge, a reasonable person under these circumstances would have known that approval and discharge were all that remained. By filing the final report, the receiver effectively put the question of discharge in play.

**{¶49}** And unlike Morgan's December 16 discharge motion, the final report was properly served on Jones. The certificate of service attached to Morgan's notice of the receiver's final report, which included the report itself as an attachment, indicated that Jones and his then-attorney were served by email on November 27, 2024. Jones concedes in his brief that "[o]n November 27, 2024, Morgan filed *and served*" the final report.

**{¶50}** We hold that, on the facts of this case, Jones received adequate notice of the need to raise objections or request a more detailed accounting on November 27, 2024, when he was served with receiver's final report.

**{¶51}** We further hold that, under the same facts, the 21 days between the

---

[7] The commissions paid to Prodigy and "Sibcy Cline Realtors (Hyde Park)" totaled $51,000, which is six percent of the $850,000 sale price.

November 27 final report and the December 18 discharge order constituted an adequate opportunity for Jones to file any objections. Although the domestic-relations court did not prescribe a set time for filing objections in advance, we find instructive Hamilton Cty. C.P., Gen.Div., Loc.R. 14(B), which requires that "[a]ny memorandum contra" a motion (other than for summary judgment) be filed "within fourteen days" from the date the party was served with the memorandum in support of that motion.[8] We also take into consideration the fact that Jones never sought the domestic-relations court's leave to file any claims against the receiver, nor indicated a specific intent to do so. *Compare PNC Bank, Natl. Assn. v. Kidz Real Estate Group, L.L.C.*, 2013-Ohio-1357, ¶ 16-19 (6th Dist.) (holding that trial court abused its discretion by discharging receiver without holding a hearing on outstanding motion for leave to file a complaint); *Bancohio Natl. Bank v. Southland Lanes, Inc.*, 1988 Ohio App. LEXIS 1828 (3d Dist. May. 12, 1988) (holding similarly under similar circumstances).

**{¶52}** We reject Jones's suggestions that he was entitled to an *oral* evidentiary hearing. We agree that, to be meaningful, a litigant must be afforded an opportunity to submit evidence in support of their objections. But no statute mandates that this take the form of an oral proceeding. Courts frequently resolve evidentiary matters on paper submissions, and we cannot see why equity—which, in its most traditional form, relied upon depositions, interrogatories, and written accountings[9]—would demand something more. Of course, if a court rule or relevant statute promises an oral evidentiary hearing before discharge, then one must be provided. *Compare, e.g.*, *Fifth Third*, 2013-Ohio-5755, at ¶ 54 (2d Dist.) (requiring oral evidentiary hearing because

---

[8] The Domestic Relations Division has no time-for-filing rule of its own.

[9] *See* Baker, *Introduction to English Legal History*, 112 (5th Ed. 2019); Bruhl, *Law and Equity on Appeal*, 124 Colum.L.Rev. 2307, 2335-2336 (2024). *But see* Bruhl at 2338-2339 (noting that the first congress permitted federal courts sitting as courts of equity to take evidence by live testimony).

local rule applied statutory procedures for settling executors/administrators of decedents' estates to receivership accounts). But absent such specificity, "the decision whether to hold an oral evidentiary hearing is left to the discretion of the trial court." *See State v. Bostick*, Slip Opinion No. 2025-Ohio-5559, ¶ 19. Because Jones never explained to the domestic-relations court why an oral evidentiary hearing was required, that court did not abuse its discretion in declining to hold one.

**{¶53}** In sum: we hold that the receiver put the issue of discharge in play by filing the final report on November 27, and that the 21 days following it provided an adequate opportunity to respond. If, after seeing the report, Jones believed a more thorough accounting was in order, he should have asked for one then. If he believed that the receiver's expenses were dubious, he should have objected. And if he had claims against the receiver, he should have brought them. The domestic-relations court allowed him three weeks to do so—more than the usual time to oppose a motion. Hearing no objections, it approved the receiver's account as-is and discharged the receiver. Without a controlling rule or statute to provide hard deadlines, we cannot say that this was contrary to the usages of equity, deprived Jones of due process, or constituted an abuse of discretion.

### 2. Challenged Provisions of the Discharge Order

**{¶54}** In addition to his objections to the manner in which the discharge order was entered, Jones contends that several provisions in the discharge order were improper. Specifically, he challenges the provisions (1) finding that the receiver acted in good faith, (2) approving the receiver's fees, (3) releasing the receiver and others from liability, (4) permitting the receiver to turn over any receivership assets that might later come into its possession, and (5) imposing certain ongoing obligations on the parties.

**{¶55}** *First*, Jones contends that, without a hearing, the domestic-relations court should not have found that the receiver "acted in good faith, with all due ordinary care, and consistent with sound business judgment" or that the receiver's actions "were entirely proper, reasonable, necessary, and were of direct benefit to the Receivership Assets and all parties to this action." But these are standard findings upon a receiver's discharge. If the court thought matters were otherwise, it would be derelict in discharging the receiver without first surcharging its account or otherwise holding it responsible. If Jones had reason to believe that the receiver's actions were *not* in good faith, he had a responsibility to bring that to the domestic-relations court's attention, especially once the "final report" was submitted. He didn't.

**{¶56}** In the absence of such objections, we recognize that the receiver was the domestic-relations court's agent, and that the domestic-relations court had consistent supervision over the receiver's actions. *See Forest City Invest. Co. v. Haas*, 110 Ohio St. 188, 192-193 (1924) (a receiver "is an officer of the court, his possession the possession of the court, and the appointment is made in order to conserve the interests of the litigants with respect to the property in *custodia legis*"); *Hummer v. Hummer*, 2011-Ohio-3767, ¶ 18 (8th Dist.) ("[T]he receiver is the arm of the court and is at all times subject to the court's order and direction."). The domestic-relations court was therefore in a unique position to make findings about the good faith of its agent. If, after discharge, some previously unavailable evidence of bad faith should come to light, Civ.R. 60(B) supplies a safety valve. But Jones was not entitled to an evidentiary hearing prior to discharge to fish for evidence of bad faith.

**{¶57}** *Second*, Jones challenges the domestic-relations court's approval of the expenditures, costs, and payments of the receiver as reasonable. He contends that the findings are "unsupported by any facts and evidence." But these findings, even more

23

so than the finding of good-faith—are essential prerequisites to discharge; a receiver cannot be finally discharged if their account remains open or their fees remain unsettled. *See* 3 *Clark on Receivers*, § 693, at 1277. The domestic-relations court supervised its receiver and found the receiver's expenses reasonable. Again, if Jones believed otherwise, it was incumbent upon him to say so. And if Jones did not believe the data provided in the receiver's reports were adequate, it was incumbent upon him to request a more thorough accounting. When he made no such timely request, the domestic-relations court could proceed to discharge the receiver.

{¶58} *Third*, Jones asserts that various liability-release provisions in the discharge order were "patently unconscionable." The domestic-relations court's discharge order stated:

> IT IS FURTHER ORDERED that the Receiver, as well as its employees, agents, contractors, consultants, accountants, and attorneys, are discharged from all further duties, liabilities, and responsibilities relating to the Receivership Assets without further liability or obligation, and no person shall have any further claim against the Receiver, its employees, agents, contractors, consultants, accountants, and attorneys, [Morgan], or the Receivership Assets, on account of or related to this Court's Orders or the Receiver's actions or inactions with respect to the Receivership Assets.

The language is broad, but its effect is specific. It discharges liability "relating to the Receivership Assets" and extinguishes claims "on account of or related to" the domestic-relations court's order or the receiver's actions "*with respect to the Receivership Assets.*" We read this language as a release of *official-capacity* liability to or from the receivership. Such a release is essentially hortatory: *no claim* may be

brought by a receivership that no longer exists, nor can any claim be brought against a receiver in their official capacity once the receiver is discharged. *See Fifth Third*, 2013-Ohio-5755, at ¶ 30 (2d Dist.); 2 *Clark on Receivers*, § 422, at 708; *see also Madorsky*, 45 Ohio App. at 85-86.

{¶59} Reading the liability-release provision as concerning official-capacity liability is the only way to make sense of its inclusion of *Morgan*'s name. Obviously Morgan would not generally have individual liability "on account of or related to [the domestic-relations] Court's Orders or the Receiver's actions or inactions with respect to the Receivership Assets." But, traditionally, when a receiver's appointment was *annulled* or *abrogated*, rather than *vacated* or *discharged*, equity held "the party who procured the appointment liable for the expense incurred over what it would have been if a receiver had not been appointed." 2 *Clark on Receivers*, § 422, at 708. In other words, when a receiver was wrongfully appointed, the party who sought the appointment may *assume* liability for actions taken in the receiver's official capacity. *Compare Taintor v. St. John*, 50 Mont. 358, 360 (1915) ("Where the order vacating the appointment [of the receiver] operates merely as the discharge of a receiver, both the receiver and the party who secured his appointment are relieved from liability for the acts of the receiver, whereas, if the order is vacated in the sense of being annulled, the receiver and the party securing his appointment will be regarded as wrongdoers.").

{¶60} The liability-release provision makes sense only against this backdrop. Morgan had sought the receiver. To avoid any confusion as to whether she might assume liability for the receiver's official actions, the domestic-relations court made clear that no such claim should be brought against her. Thus, we hold that the liability-release provision did no more than release the named individuals from official-capacity liability, and that this was entirely proper as part of a discharge order.

**{¶61}** *Fourth*, Jones challenges a provision of the discharge order stating that, if "any assets" should "come into the Receiver's hands that would have been the subject of this Receivership, the Receiver is authorized to turn those assets over to the purchaser of the Receivership Assets without further order of the Court," so long as the receiver notifies the court and parties of this fact. Jones contends that this "is an obvious attempt by Morgan and/or the Receiver to allow conversion/theft of Jones' very valuable personal property," over which he claims the domestic-relations court had "no jurisdiction." We disagree. This clause was clearly pro forma—meant to provide for quick resolution and procedural safeguards, should the receiver stumble across receivership assets it failed to properly convey. Given that the house was the *only* asset in receivership in this case, we cannot think of how this provision would come into play. But whatever its effect may be, this provision certainly would not permit transfer of Jones's personal property to the buyers of the home, as such property would not "have been the subject of [the] Receivership."[10] And even if the receiver misapplied the provision to permit conveyance of Jones's personal property to the buyers, it would have to notify Jones, giving him an opportunity to object.

**{¶62}** *Fifth*, and finally, Jones challenges a provision terminating the receivership "subject to the continual obligations of the parties to act in accordance with this Order." Jones contends that his "continual obligation" means that the receivership could not have been "unconditionally and finally terminated." Jones is right, insofar as he contends that a receivership is not finally terminated if it "leaves

---

[10] A prior order of the domestic-relations court did state that any personal property left in the home at time of sale would be deemed abandoned. But abandonment would simply divest Jones of title, so that ownership would pass to the first person to reduce the property to possession. *See Wyman v. Hurlburt*, 12 Ohio 81, 87 (1843); *Staley v. Phillips*, 2022-Ohio-2112, ¶ 14 (1st Dist.). Abandonment would not make the property "the subject of this Receivership." Thus, this provision would have no application.

unresolved matters that the receiver must address." *Fifth Third*, 2013-Ohio-5755, at ¶ 25 (2d Dist.). But the "continual obligation[s]" placed upon the parties in this case did not impair the court's ability to finally discharge the receiver. The discharge order left no assets in the receivership, left no matters for the receiver to address, and made clear the parties' rights and obligations with respect to the former receivership assets. *Compare Fontain*, 2021-Ohio-2750, at ¶ 27 (1st Dist.); *Taylor v. Easton*, 180 F. 363, 367-368 (8th Cir. 1910). These "continual obligation[s]" were not in the nature of ongoing receivership duties, but more in the nature of an injunction, tailored to ensure the parties could not undo the receiver's work.

{¶63} We therefore find no fault in the challenged provisions of the domestic-relations court's discharge order.

### 3. Other Issues

{¶64} Jones also claims the discharge order is invalid for a number of other reasons. None are meritorious.

{¶65} Jones contends that the sale and discharge orders were invalid because neither Jeff Lane nor Prodigy were properly appointed as receiver. But Jones has already appealed the domestic-relations court's March 29, 2023 order substituting Prodigy as receiver. He lost. *See Jones VII*, 2024 Ohio App. LEXIS 3994, at *2. And to the extent Jones now attacks the oath signed by Lane on April 4, 2023, rather than the March 29 substitution order itself, that issue is barred by the doctrine of res judicata. Both orders merged into the order confirming the sale, which Jones appealed in *Jones VII*. Thus, he is precluded from relitigating the question of Lane/Prodigy's appointment. *See State v. Roberts*, 2013-Ohio-4580, ¶ 95 (issues that a party "could have, and should have, raised" in a prior appeal are barred by res judicata); *Pioneer Automotive, L.L.C. v. Village Gate, L.L.C.*, 2023-Ohio-4501, ¶ 13 (1st Dist.) (res

27

judicata applies both in subsequent actions and subsequent appeals from orders in the same action).

**{¶66}** Jones contends it was improper to permit the receiver to take a commission from the sale of the property as a fee. But this fee arrangement was established in the March 29, 2023 order substituting Prodigy as receiver. Again, Jones had the opportunity to challenge that order in *Jones VII*, so his challenge is barred by res judicata.

**{¶67}** Jones contends that the briefing on the receiver's 2023 motion to authorize the sale of the property was never completed and that matters in Jones's "pre-hearing status report," dated December 10, 2023, and filed January 3, 2024, were not addressed. But both the adequacy of sale-motion briefing and the concerns raised in Jones's prehearing status report concerned the domestic-relations court's January 2, 2024 sale order. We have already upheld that order in *Jones VII*. So these issues, too, are foreclosed under the doctrine of res judicata.

\* \* \*

**{¶68}** Having found no merit in any of Jones's arguments for reversing the December 19, 2024 discharge order, we overrule Jones's second assignment of error.

### III. MORGAN'S SANCTIONS MOTION

**{¶69}** On September 15, 2025, Morgan filed a motion to strike Jones's principal brief and to impose sanctions on the ground that Jones's brief cited two cases that do not exist. On October 10, a motions panel denied Morgan's motion to strike but elected to leave the question of sanctions for consideration by this panel. After consideration, we now exercise our discretion to deny Morgan's motion for sanctions.

**{¶70}** Civ.R. 11, which authorizes trial courts to impose sanctions for certain improper filings, does not apply to appeals. *See* Civ.R. 1(C); *Estate of Garza v. Onesto*,

2016-Ohio-5531, ¶ 15 (10th Dist.). However, Ohio's courts of appeals do have authority under App.R. 23 to order an appellant "to pay reasonable expenses of the appellee" if they find "that an appeal is frivolous." And we possess inherent authority to impose sanctions "'where that party's conduct thwarts the administration of justice, disobeys court orders, abuses the judicial process, or when it is otherwise necessary for the administration of justice and protection of judicial powers and processes.'" *Smith v. Gamble*, 2025-Ohio-2381, ¶ 26 (12th Dist.), quoting *DiCuccio v. Lindsmith*, 2018-Ohio-2320, ¶ 30 (10th Dist.). *See generally State v. Coleman*, 2026-Ohio-965, ¶ 39-50 (11th Dist.) (chronicling the history, source, and limits of the inherent sanctions authority of Ohio's courts of appeals).

{¶71} This court has exercised its inherent authority in part by promulgating Loc.R. 23(A), which reads as follows:

> If the First District Court of Appeals, sua sponte or on motion by a party, determines that an appeal, original action, or motion is frivolous or is prosecuted for delay, harassment, or any other improper purpose, it may impose on the person who signed the appeal, original action, or motion, a represented party, or both, appropriate sanctions. The sanctions may include an award to the opposing party of reasonable expenses, reasonable attorney fees, costs or double costs, or any other sanction the First District Court of Appeals considers just. An appeal, original action, or motion shall be considered frivolous if it is not reasonably well-grounded in fact, or warranted by existing law, or by a good faith argument for the extension, modification, or reversal of existing law.

Morgan argues that Jones's "phantom cases" warrant sanctions under this provision.

**{¶72}** At the threshold, we find that the two citations Morgan identified were clearly "bogus" or "phantom" cases. On page 22 on his brief, Jones cited "*City of Columbus v. Edwards-Bosh v. Tri-County Toyota*, 10th Dist. Franklin No. 07AP-1042, 2008-Ohio-4320, ¶ 13-16," as an example of a case in which "the Tenth District held that a post-judgment indemnification order against cross-claim defendants required an evidentiary hearing." No such case exists. We could find no case with the odd three-party caption provided by Jones. The webcite he offered points to *Wilson v. Eberlin*, 2008-Ohio-4320 (7th Dist.), an opinion with a different name from a different court that has no paragraph 13 and says nothing about indemnification. And a search of the Franklin County Clerk of Courts' online records suggests that the only Tenth District case numbered 07AP-1042 is *State of Ohio v. Shawn Mills*, a criminal case in which the Tenth District denied leave to appeal without publishing an opinion.

**{¶73}** On the same page of his brief, Jones also cited "*State ex rel. Ohio Turnpike Comm'n v. Indus. Comm'n*, 109 Ohio St.3d 313, 2006-Ohio-2980, ¶ 22," as a case in which "the Supreme Court, in mandamus, emphasized that due process dictates 'an opportunity to be heard at a meaningful time and in a meaningful manner' before an order imposing financial security is entered." An opinion bearing the caption Jones provided exists, but it was published in 2009 (not 2006) by the Tenth District (not the Ohio Supreme Court). *See State ex rel. Ohio Turnpike Comm. v. Indus. Comm.*, 2009-Ohio-468 (10th Dist.). The webcite Jones provided points to a different court of appeals decision, *Santee v. Mansell*, 2006-Ohio-2980 (9th Dist.). And when one opens to the 313th page of the 109th volume of the Ohio State Reports, Third Series, one finds *In re Ohio Criminal Sentencing Statutes Cases*, 2006-Ohio-2109. None of these three opinions include the passage Jones quoted.

**{¶74}** Morgan suggests that these phantom cases may be artifacts from the use

of generative artificial-intelligence ("AI") software drawing upon large language models. Appellate courts across Ohio and the country have experienced a surge of filings with such "hallucinations"—i.e., false citations proffered as true by generative AI.[11] Jones neither confirms nor denies the allegation that he relied on AI; he merely states that the bogus cases "were the result of [his] chasing case law threads from other cases and not keeping close track of the situation."

**{¶75}** We are inclined to agree with Morgan: Jones's citations bear the hallmarks of AI hallucinations. No part of either citation refers to a real case remotely related to the proposition for which it is cited. If Jones had real cases in mind, he surely would have provided them in his opposition to Morgan's motion. And if Jones had fabricated his bogus cases the old-fashioned way, we doubt he would have opted for an odd, three-party caption like "*City of Columbus v. Edwards-Bosh v. Tri-County Toyota.*"

**{¶76}** This court now has a rule about the use of AI. *See* Loc.R. 45. In it, we make clear that attorneys and parties using generative AI "are responsible for ensuring that all legal arguments, factual assertions, evidence, and citations are accurate, relevant, and comply with applicable laws, procedural rules, and ethical obligations," and that the submission of "inaccurate, misleading, or fabricated AI-generated content" may result in "strik[ing] the filing and/or impos[ing] sanctions on the attorney or party." Loc.R. 45(B) and (C).

**{¶77}** But Loc.R. 45 was not in place when Jones filed his brief. The use of

---

[11] *See, e.g., Gamble v. Gamble*, 2025-Ohio-2381, ¶ 25-28 (12th Dist.); *Coleman*, 2026-Ohio-965 (11th Dist.); *Park v. Kim*, 91 F.4th 610, 613-616 (2d Cir. 2024); *Garces v. Hernandez*, 2025 U.S. App. LEXIS 21220, *3-4 (5th Cir. Aug. 19, 2025); *Moore v. Del City*, 2025 U.S. App. LEXIS 31411 (10th Cir. Dec. 3, 2025); *Shahid v. Esaam*, 376 Ga.App. 145 (2025); *In re S.M.*, 2025 IL App (4th) 250277-U, ¶ 28-34; *Williams v. Kirch*, 268 N.E.3d 284, 288 (Ind.App. 2025); *Kruse v. Karlen*, 692 S.W.3d 43 (Mo.App. 2024). This survey is far from complete, but it provides a flavor of the problem's prevalence in the last two years.

fabricated citations is clearly a breach of a party's responsibilities to the court. But our general sanctions rule, Loc.R. 23(A), focuses on whether "an appeal, original action, or motion is frivolous or is prosecuted for delay, harassment, or any other improper purpose." The submission of a brief containing AI hallucinations does not inherently fit these descriptions.

**{¶78}** In the end, we have discretion to determine whether sanctions are warranted in a particular case. Although we could sanction Jones under our inherent authority, we choose not to do so because (1) we had not yet promulgated Loc.R. 45 when Jones filed the offending brief, and (2) a limited number of his citations (only two) were to "phantom" cases.

**{¶79}** We caution Jones and others who would submit fabricated citations in their briefs that the promulgation of Loc.R. 45 makes such leniency unlikely moving forward. The rules now provide litigants with clear notice of their duties in this area—and of the potential consequences, should those duties be breached. With these words of warning, we deny Morgan's September 15, 2025 motion for sanctions.

## IV. MORGAN'S VEXATIOUS-LITIGATOR MOTION

**{¶80}** Finally, on December 19, 2025, Morgan moved this court to declare Jones a vexatious litigator under Loc.R. 23.

**{¶81}** "If a party habitually, persistently, and without reasonable cause engages in frivolous conduct under" Loc.R. 23(A), this court may "find the party to be a vexatious litigator" and "impose filing restrictions on the party." Loc.R. 23(B). Loc.R. 23(A) permits us to sanction an attorney or party if we determine "that an appeal, original action, or motion is frivolous or is prosecuted for delay, harassment, or any other improper purpose." An appeal, action, or motion is "frivolous if it is not reasonably well-grounded in fact, or warranted by existing law, or by a good faith

argument for the extension, modification, or reversal of existing law." Loc.R. 23(A).

**{¶82}** A vexatious litigator, whether under this rule or under R.C. 2323.52, "must seek leave of court to proceed with any appeal or original action" in this court. Loc.R. 23(C). In addition, we may restrict a vexatious litigator's ability to file in this court "without the filing fee or security for costs," or may impose "any other restriction the [court] considers just." Loc.R. 23(B).

**{¶83}** Although this court has no opinions applying our vexatious-litigator rule, we have previously addressed the analogous frivolous-conduct and vexatious-litigator statutes, R.C. 2323.51 and 2323.52. Those statutes, like our rule, identify as frivolous conduct that "obviously serves merely to harass or maliciously injure another party to the civil action," or that "is imposed solely for delay." R.C. 2323.52(A)(2)(a) and (b). Under these provisions, we have said that "[i]t is the nature of the conduct, not the number of actions, which determines whether a person is a 'vexatious litigator,'" but that the "number of actions" is nevertheless "relevant to whether a person habitually and persistently engages in vexatious conduct." *Stephens v. Downtown Prop. Mgmt.*, 2023-Ohio-1988, ¶ 19 (1st Dist.). And we have described as "[v]exatious conduct" a litigant's "'filing unnecessary, inappropriate or supernumerary pleadings and motions which raise or re-raise arguments that have been repeatedly rejected by the courts,'" or the "'consistent repetition of arguments and legal theories that have been rejected by the court numerous times.'" *Id.*, quoting *Howdyshell v. Battle*, 2019-Ohio-5232, ¶ 18 (5th Dist.), and *Prime Equip. Group, Inc. v. Schmidt*, 2016-Ohio-3472, ¶ 40 (10th Dist.).

**{¶84}** Here, we confront Jones's eleventh appeal since October 2019. All 11

appeals were taken from the same divorce proceeding.[12] Nine of those appeals were noticed within a two-and-a-half-year span (from July 28, 2021, to January 29, 2024).

**{¶85}** Most of Jones's appeals have been dismissed. We dismissed part of Jones's appeal numbered C-210408 because the order he challenged was interlocutory. *Jones II*, 2022-Ohio-1831, at ¶ 10 (1st Dist.). We dismissed two more of his appeals in their entirety for that reason, too. *See* Dismissal Entry, *Morgan v. Jones*, No. C-220124 (1st Dist. June 24, 2022) ("*Jones III*"); Entry of Dismissal, *Morgan v. Jones*, No. C-230210 (1st Dist. Aug. 17, 2023) ("*Jones V*"). And we dismissed four more of Jones's appeals—filed on various dates between May 6, 2022, and November 28, 2022—because Jones failed to timely file a brief, despite repeated extensions of time. *See* Entry of Dismissal, *Morgan v. Jones*, Nos. C-220205, C-220377, C-220476, and C-220594 (1st Dist. Apr. 11, 2023) ("*Jones IV*"). Most recently, we dismissed the appeal Jones filed pro se on behalf of his trust, on the ground that Jones was not licensed to practice law in Ohio. *Jones VI*, No. C-240067 (1st Dist.).

**{¶86}** Jones has lost every appeal we have not dismissed, including this one. *See Jones I*, 2020 Ohio App. LEXIS 3200; *Jones II* at ¶ 2; *Jones VII*, 2024 Ohio App. LEXIS 3994.

**{¶87}** Morgan notes that Jones's appeals have often sought to relitigate issues this court has already resolved. Jones's briefs in this case, for example, argue that the domestic-relations court never validly appointed Jeff Lane and Prodigy as receiver. We held over a year ago that "Jones's arguments challenging the trial court's March 29, 2023 order substituting a receiver for the [house] are not well-taken." *Jones VII* at

---

[12] While all 11 appeals are matters of public record, we note that they are also part of the record in this very appeal. The various notices of appeal and decisions of this court were included in the papers and the certified transcript of the docket and journal entries comprising the record on appeal. *See* App.R. 9(A)(1).

\*3. Further, his briefs again question the propriety of the domestic-relations court's 2023 order authorizing the sale of the house, which this court has held he lacks standing to challenge. *See id.* at \*4.

{¶88} Morgan also contends that Jones has prosecuted his appeals for delay and harassment. Jones's history of delay is striking. In the consolidated appeals dismissed in *Jones IV*, for example, Jones sought and received *numerous* extensions of time to file his opening brief. Specifically, in the appeal numbered C-220205, this court initially ordered Jones to file a brief by July 25, 2022. Many extensions later, this court imposed a hard and final deadline of April 4, 2023, for Jones's brief. We warned Jones that he would receive no further extensions, and that his appeal would be dismissed if he failed to comply. Undaunted, Jones filed two more motions asking to extend his time to file. When these went ungranted, Jones filed a brief on April 11—a week after the final deadline and 260 days after it was originally due. We declined to accept this brief and dismissed the appeal.

{¶89} But while Jones's conduct may be "vexatious" in the colloquial sense, we find that he does not meet the definition set forth in Loc.R. 23. For the past six years, Jones has appealed to this court in repeated attempts to avoid the consequences of his actions below. But those appeals have not been wholly frivolous. Even our dismissals for failure to timely file a brief in *Jones IV* cited only App.R. 18(C) and made no frivolousness findings under Loc.R. 23(A).

{¶90} And whatever his prior conduct, we do not believe this appeal was wholly frivolous. Jones's notice-and-opportunity argument, while ultimately unavailing, had a good-faith basis in law and fact. That much is clear from the lengthy discussion and wide-ranging survey of authorities in Part II.B.1 of this opinion. No on-point case offered an easy answer, and, as we acknowledged in Part II.B.1.b, the

domestic-relations court did not follow best practices for ensuring unambiguous notice. Further, some of Jones's arguments regarding the terms of the discharge order were not frivolous. For example, in Part II.B.2 we held that the provision releasing Morgan from liability relating to the receivership was proper—but only by reading the provision's seemingly broad text in the context of historical receivership liability principles. Jones could certainly bring a good-faith challenge to the provision's eyebrow-raising language.

**{¶91}** We therefore find that Morgan has not shown that Jones "habitually, persistently, and without reasonable cause engage[d] in frivolous conduct" under Loc.R. 23(B). Jones's appeals may have been habitual and persistent. Particular issues raised in those appeals may have been baseless. But we cannot say Jones's appeals were habitually, persistently, and entirely frivolous or without cause. *See* Loc.R. 23(B). We therefore deny Morgan's motion to declare Jones a vexatious litigator.

## V. CONCLUSION

**{¶92}** For the foregoing reasons, we (1) hold that Jones's motion for a new trial was a legal nullity, vacate as void the domestic-relations court's March 21, 2025 order denying it, and hold that the first assignment of error is moot, (2) overrule Jones's second assignment of error and affirm the domestic-relations court's December 19, 2024 order discharging the receiver, (3) deny Morgan's September 15, 2025 motion for sanctions, and (4) deny Morgan's December 19, 2025 motion to declare Jones a vexatious litigator pursuant to Loc.R. 23(B).

Judgment accordingly.

**KINSLEY, P.J.,** and **BOCK, J.,** concur.

36